Argued July 24, affirmed November 13, petition for rehearing
denied December 6, 1973, petition for review
denied January 15, 1974

LINES, *Respondent, v.* CITY OF
MILWAUKIE ET AL, *Appellants.*

515 P2d 938

*Myer Avedovech,* City Attorney, Milwaukie, argued the cause and filed the briefs for appellants.

*Robert A. Bennett,* Portland, argued the cause for respondent. With him on the brief were Willner, Bennett, Meyers & Riggs, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

SCHWAB, C. J.

Plaintiff was employed in a civil service position—a fireman—by the defendant-city. Under the terms of the city charter he could only be discharged "for cause." After being discharged, plaintiff brought this action contending there was no cause therefor. The circuit court ruled in plaintiff's favor and defendants appeal.

Defendants' two assignments of error are stated in these terms:

(1) "The trial court committed reversible error in ruling that there was insufficient evidence to sustain the decision of the Milwaukie Civil Service Commission.

(2) "The trial court committed reversible error in ruling that the city could not rely upon the first two suspensions as part of grounds for dismissal."

While at first blush defendants' first assignment seems to argue that the trial court's conclusion is not supported by substantial evidence, read in context with the arguments in support of this assignment, it appears that defendants' real complaint concerns the scope of review they contend was used in the circuit court.

Discussing this scope-of-review issue requires a brief historical survey. In 1959 the legislative assembly enacted ORS 242.702 to 242.990 providing for civil service employment of most firemen in cities and counties. This statute provided for the appointment of local civil service commissions, ORS 242.706 to 242.712, for competitive examinations for employment and promotion, ORS 242.724, 242.752, 242.758, and that firemen subject to civil service could only be discharged for cause, ORS 242.796. Also, this statute provided

that a discharged fireman could seek judicial review of whether there was cause for his discharge.

"(1) Any decision of the commission affecting any permanent employe or employes subject to ORS 242.702 to 242.824 may be appealed to the circuit court of the county in which the office of the appointing power or the commission is located, and the court shall hear the appeal.

"(2) The appeal, if taken by either an employe or by the appointing power, shall be taken by serving upon the commission, within 30 days after the date of the entry of such judgment or order, a written notice of appeal stating the grounds thereof and demanding that a certified transcript of the record and of all papers on file in the office of the commission affecting or relating to such judgment or order be filed by the commission with the court. The commission shall, within 10 days after the filing of such notice, make, certify and file such transcript with the court.

"(3) The circuit court shall hear and determine such appeal in a summary manner. The hearing shall be confined to the determination of whether the order of removal, discharge, demotion or suspension made by the commission was made in good faith for cause. No appeal to such court shall be heard except upon such grounds.

"* * * * *." ORS 242.804.

A couple of years after the firemen's civil service act was enacted some residents of the city of Milwaukie brought a mandamus action to compel the city to establish a firemen's civil service system in accordance with ORS 242.702 to 242.990. This led to the decision in *State ex rel Heinig v. Milwaukie et al*, 231 Or 473, 373 P2d 680 (1962). In *Heinig* the court noted that under the home rule provisions of the Oregon Con-

stitution① certain matters are entrusted to state regulation and other matters are entrusted to local regulation by the home rule cities. In determining whether a given matter is one for state or local regulation,

"[t]he real test is not whether the state or the city has an interest in the matter, for usually they both have, but whether the state's interest or that of the city is paramount [McDonald, American City Government and Administration 79 (3d ed 1941)]." 231 Or at 481.

"* * * Each case requires a weighing of the state's interest against the interest of the municipality. In some instances the need for uniformity, or the benefit of a widespread application of the law, or the recognition that the matter dealt with is interrelated with other functions of the state and similar considerations will require that the statute have preference over the charter; on the other hand the charter will prevail when the advantages of local autonomy are paramount." 231 Or at 488.

Applying these tests, the Supreme Court concluded:

"* * * the *administrative* machinery by which the employment and discharge of city firemen is to be determined is a matter of local concern * * *." 231 Or at 484. (Emphasis supplied.),

and that therefore the firemen's civil service act passed in 1959 did not require a home rule city to establish a state mandated civil service system for city firemen.

In 1966 the citizens of the city of Milwaukie voted to amend the city charter to create a civil service

---

① The decision in State ex rel Heinig v. Milwaukie et al, 231 Or 473, 373 P2d 680 (1962), was based on Oregon Constitution, Art XI, § 2, and Art IV, § 1a, as those provisions read in 1962 when that case was decided. Since then Art IV, § 1a has been repealed, and replaced by Art IV, § 1. However, this was not a change of substance that impairs the conclusions reached in *Heinig*.

system for city employes, including firemen. As amended by that vote, the charter now provides:

"No person subject to civil service \* \* \* who has been permanently appointed under this act shall be dismissed, demoted, suspended without pay, or deprived of special privileges except for cause, and then only upon the signed written accusation of the city manager \* \* \*." Section 62 (1).

In what is apparently a definition of the term "for cause," Section 61 (1) of the charter provides:

"The tenure of persons subject to civil service shall continue during good behavior and such persons may be dismissed, demoted, suspended without pay, or deprived of special privileges only for the following reasons:

"(a) Incompetency, inefficiency, or inattention to or dereliction of duty.

"(b) Dishonesty, intemperance, drug addiction, immoral conduct, insubordination, or discourteous treatment of the public or of fellow employees.

"(c) Any other willful failure of good conduct tending to injure the public service.

"(d) Any willful violation of the provisions of this act or of the rules and regulations adopted under this act.

"(e) Conviction of a felony or a misdemeanor involving moral turpitude.

"(f) The willful giving of false information or withholding information with intent to deceive when making application for an entrance examination."

The charter provides for a civil service commission to review such matters as discharges, and in very unusual language also provides for judicial review of decisions of the commission:

"\* \* \* Any decision of the commission affecting any permanent employee or employees subject to this act *shall be subject to judicial review in a de novo trial in law in the circuit court,* in which

proceeding the party appealing to the circuit court shall be designated plaintiff and in which shall be alleged: the disciplinary action giving rise to the cause; the grounds upon which appeal was taken to the commission; the date of entry of the commission's finding and order; and the fact that the aggrieved party appeals from such order. Any such appeal shall be taken within 60 days from the date of the commission's order or shall be conclusively waived." Section 68. (Emphasis supplied.)

Against this background, it becomes apparent that the scope of review by the circuit court in this case depends upon whether the circuit court's jurisdiction was based on ORS 242.804 or, instead, on the Milwaukie City Charter, Section 68. If the circuit court's jurisdiction was based on ORS 242.804, then review should have been limited to an examination of the record made before the Milwaukie Civil Service Commission. *See, Phillips v. State Board of Higher Ed.*, 7 Or App 588, 490 P2d 1005 (1971), Sup Ct *review denied* (1972). If the circuit court's jurisdiction was based on Section 68 of the city charter, then the circuit court was entitled to conduct "a de novo trial in law."

■ Section 68 of the city charter did not confer jurisdiction on the circuit court. A home rule city has no power to expand or contract the jurisdiction of the circuit courts of the state of Oregon. *City of Portland v. Stevens*, 180 Or 514, 178 P2d 175 (1947); *La Grande v. Municipal Court et al*, 120 Or 109, 251 P 308 (1926); *Wong Sing v. Independence*, 47 Or 231, 83 P 387 (1905).

■ ORS 242.804 was the proper basis of circuit court jurisdiction. As noted above, in *State ex rel*

*Heinig v. Milwaukie et al,* supra, the Supreme Court concluded:

"* * * the administrative machinery by which the employment and discharge of city firemen is to be determined is a matter of local concern * * *." 231 Or at 484.

In *Heinig* the court also observed:

"* * * It is not necessary to regard all of the activities of a municipal department as either local or state-wide; some of the activities may be predominantly local, whereas others may be predominantly state-wide. A statute standardizing fire hose couplings would very likely be held to be binding upon the various cities; whereas a statute standardizing the style of firemen's uniforms would not." 231 Or at 484-85.

This is such a situation. While the *administrative* machinery concerning employment of firemen is for the city to determine, once *judicial* machinery comes into play the state's interest is paramount.

This conclusion follows from *Boyle v. City of Bend,* 234 Or 91, 380 P2d 625 (1963). This case arose when Bend assessed some property owners to widen a street. The property owners opposed the project, and exhausted various hearing and appeal procedures set out in the city charter. Unsuccessful in those efforts, the property owners went to circuit court, as they were authorized to do by ORS 223.397. The property owners won a jury verdict. On appeal, the city contended the circuit court did not have jurisdiction because levying assessment and appeals therefrom is a matter of local concern and therefore ORS 223.397 was invalid under the reasoning in *Heinig.*

The Supreme Court disagreed with the city:

"* * * [W]e are of the opinion that ORS 223.-

397 deals with a matter of general concern to the state as a whole.

"It may be conceded that 'a tax levy by a municipality, germane to the purposes for which it was incorporated * * * is a matter of local concern.' And the procedures by which the city determines whether an improvement is to be made; whether it is to be a general or special assessment; and how objections to the levy are to be handled, are matters which the city has the controlling power to adopt within constitutional limits. But when one group of property owners in a city is segregated from other inhabitants in the city for separate tax treatment, the procedural safeguards to which that group is entitled in the process of imposing a charge on their land is a matter of general concern. The imposition of a special assessment upon property which is not specially benefited by the improvement unjustly deprives the owner of a property interest. The question of whether his property is benefited is, therefore, vital and the procedure by which that question is determined is equally vital. A matter of such fundamental nature, relating to the procedure by which it is determined whether a person's property is fairly charged with the cost of a city improvement, is not at that point a municipal affair but a matter of general public interest in the state. Therefore, the legislative assembly had the power to guarantee to the property owner the protection afforded by traditional court procedure, including a trial by jury as provided in ORS 233.397.

"* * * * *

"A similar principle is announced in other cases.⑧ We hold that ORS 233.397 is not in conflict with the charter of the city of Bend and that the provision for appeal to the circuit court is not a matter of purely local concern.

"* * * * *

"⑧ Dell v. City of Lincoln, 170 Neb 176, 102 NW2d 62, 73 (1960) states:

" ' "The preservation of order, the enforcement

of law, the protection of life and property, and the suppression of crime are attributes of state sovereignty and matters of state-wide concern, * * *."

" '* * * * * *

" 'As we view it, statutes which are enacted for the transfer or protection of the property rights of every owner of real property in the state, or those in a proper municipal classification in this state, and the compensation which such owners are entitled to receive for the public use or disposal thereof as well, is of state-wide concern.'

"*And in In re Fortune, 138 Ohio St 385, 35 NE 2d 442 (1941), a statute permitting an appeal to the courts from the decision of a municipal civil service commission was held to embrace a matter of general concern although in Ohio municipal civil service generally is held to be a matter of local concern.*

"See also, Ex Parte Shaw, 32 Cal App2d 84, 89 P2d 161, 162 (1939); Schieffelin v. Leary, 219 App Div 660, 220 NYS 587, 594 (1927); Berry v. City of Fort Worth, 124 SW2d 842, 846 (Tex 1939), indicating that the judicial system is a matter of state concern." 234 Or at 98-100. (Emphasis supplied.)

■ It is clear from the record in this case that the parties and circuit court all thought that jurisdiction was based on Section 68 of the city charter. They were all in error in this belief. Having gotten off on that wrong foot, the parties and circuit court were also in error by presenting and considering evidence that went beyond the record developed before the city civil service commission. See, *Phillips v. State Bd. of Higher Ed.,* supra.

But these errors present no reason to reverse the circuit court's determination, because there was no objection made in that court by any party to the manner in which this case was tried. Indeed, during pre-

trial argument in chambers counsel for defendants stated that "whatever new evidence the Court felt proper under the circumstances" should be considered.[2] The plaintiff then presented about 112 pages of testimony from five witnesses. Defendants then presented about 78 pages of testimony from four witnesses. The record of proceedings before the civil service commission was not even introduced as an exhibit, although it is apparent it was available because both attorneys used it to attempt to impeach witnesses. Both attorneys then made arguments to the court based on the testimony that had been presented—not based on any claim that the court's decision should be limited to a review of the administrative record. The court then orally announced a decision. But even at this late date no objection was made about the manner in which the case had been tried and decided.

■ Jurisdictional errors can be raised for the first time on appeal. Other errors must be first objected to in the trial court in order to be raised on appeal. This includes errors relating to procedures for judicial review and scope of judicial review.

■ In this case, the circuit court had jurisdiction. Defendants' having actively participated in the procedures followed in the circuit court without any objection, it is too late now to complain for the first time about those procedures.

---

[2] The dissent cites Ward v. Ore. State Bd. of Nursing, 266 Or 128, 510 P2d 554 (1973), Beistel v. Pub. Emp. Relations Bd., 6 Or App 115, 486 P2d 1305 (1971), Phillips v. State Bd. of Higher Ed., 7 Or App 588, 490 P2d 1005 (1971), Sup Ct *review denied* (1972), and Bay v. State Board of Education, 233 Or 601, 378 P2d 558, 96 ALR2d 529 (1963), as authority for the proposition that we should decide this case on the legally correct scope of review rather than on the scope of review agreed upon by the parties. None of the above cases involved "invited error," which is what distinguishes them from the case at bar.

■ The above discussion is based on the assumption that defendants' first assignment of error raises objections to the procedures followed in the circuit court. If, instead, defendants' contention under their first assignment is that regardless of the procedures followed in the circuit court there is not substantial evidence to support the circuit court's findings, this contention has no merit.

The precipitating cause of plaintiff's dismissal was events that occurred the evening of Saturday, April 24, 1971. Plaintiff was off duty at his home. He was not wearing his fireman's uniform. Plaintiff's wife became ill. An ambulance came to their home to take her to the hospital. During the trip plaintiff objected to the ambulance driver's attempting to write down information about his wife while driving the ambulance at the same time. Plaintiff also asked the driver to use his siren and red light, but this request was refused. During the exchanges between plaintiff and the driver, plaintiff stated that he was a member of the Milwaukie Fire Department.

Upon arrival at the hospital, plaintiff attempted to go into the emergency room with his wife, but was told that he could not. It is conceded that at this time plaintiff was extremely upset, and that plaintiff was rude to the nurse who denied him admission to the emergency room. During the exchanges between plaintiff and the nurse, plaintiff mentioned he was a member of the Milwaukie Fire Department.

The only other occurrence of consequence involved plaintiff's pushing a wheelchair against a door or wall at the hospital. Plaintiff testified this happened accidentally when he arrived at the hospital and

was helping open the door so that the stretcher his wife was on could be wheeled into the emergency room. The nurse on duty testified the incident occurred later in the evening when plaintiff was using a pay phone.

On May 11, 1971, plaintiff received a letter from the city manager advising him that he was being suspended for 10 days and thereafter was being dismissed. According to the letter, the grounds for suspension were:

"1) By presenting yourself at the Dwyer Memorial Hospital on April 24, 1971 at approximately 8:30 p.m., where you identified yourself as a member of the Milwaukie Fire Department, conducted yourself in a loud, abusive manner, contrary to reasonable rules of behavior, by using loud and abusive language in the waiting room and vicinity of the emergency room of said hospital in the presence of employees and the public;

"2) By use of foul and abusive language to a supervisory employe at said hospital;

"3) By throwing equipment against the door of said hospital;

"4) By having about you a substantial odor of intoxicating beverage; and

"5) In representing to the employees that you were entitled to preferential treatment because of your status in the Milwaukie Fire Department."

In the same letter, the grounds for dismissal were identified as:

"1) On September 7, 1970, by failure to observe a direct order of the appointing authority dated August 3, 1970, cancelling all leaves and directing all personnel to be available for emergency call.

"2) On September 16, 1970 by failure to report for duty at the assigned time following specific written notification.

"3) On April 24, 1971, by presenting yourself at a public place, Dwyer Memorial Hospital, and conducting yourself in a manner described in the suspension order herein."

The circuit court evaluated this evidence based on the relevant standards for suspension and dismissal stated in the city charter; specifically, whether the events of April 24, 1971, established "discourteous treatment of the public" or "other willful failure of good conduct tending to injure the public service." Section 61 (1)(b) and (c). The circuit court concluded:

"I feel that there is nothing in the testimony of * * * [the ambulance driver] that indicates a reason for disciplinary action against the plaintiff. Some of * * * [the driver's] conduct [while driving] was such as to create a reason for apprehension * * *.

"There is no question but what Mr. Lines was verbally abusive of * * * [the nurse at the hospital]. This was, however, an isolated situation. I don't feel that it should be excused. * * * I don't feel it was justified, but then people do some rather peculiar things sometimes in moments of stress * * *.

"* * * [T]here is only one small part of Section 61 of the Charter which could conceivably be found to fit the problem with which we are here concerned, and that is discourteous treatment of the public * * * but this is not * * * discourteous treatment of the public in Mr. Lines official capacity as a fire fighter for the City.

"It is being discourteous to an individual in a situation, stress and isolated situation, totally unrelated to his work except for the fact that he did mention, and apparently on a few occasions that he was a fire fighter for the City * * *. Probably there was some small indiscretion in repeating his employment, but I don't think this has a tendency

to embarras [sic] his employer or the Department, or to render ineffective the work of the Department."

There is substantial evidence to support all of the circuit court's conclusions.

■ Defendants' second assignment of error relates to plaintiff's involvement in two disciplinary actions in September of 1970. These were referred to in the letter of dismissal to plaintiff, quoted above, as part of the grounds for dismissal.

At trial defendants offered exhibits concerning these two September 1970 disciplinary actions. Plaintiff's counsel objected to the relevancy of these exhibits. The following then occurred:

"THE COURT: I think the only pertinent facts, pertinent matters for the Court to consider is whether or not there was disciplinary action taken * * * and the factual matters that surround it that I don't think are before this Court.

"MR. AVEDOVECH [defendants' counsel]: * * * I was introducing the evidence to show that in fact there were the prior suspensions which were mentioned in the letter.

"* * * [O]f course, I didn't intend to offer them [the exhibits] for the content of the facts behind those things, simply to establish the fact that there had been suspensions held and process taken as required.

"THE COURT: Well, you are entitled to that but nothing with respect to the background.

"MR. AVEDOVECH: That would be the extent to which I would offer the next three documents which are the remaining two hearings * * *.

"* * * * * *

"THE COURT: Well, it will be received for the sole purpose of indicating that there was a suspension on September 16th as a disciplinary action and for no other reason.

"* * * * *

"MR. AVEDOVECH: We would offer it [another exhibit] on the same limited grounds again, your Honor.

"MR. BENNETT [plaintiff's counsel]: Same objection.

"THE COURT: It will be received for the same limited purpose."

Defendants now contend the circuit court erred "* * * in ruling that the city could not rely upon the first two suspensions as part of the grounds for dismissal." Defendants further contend that dismissals under the standards in the city charter can be based on a course of conduct.

It is difficult to comprehend this argument. Evidence about the two prior disciplinary actions was offered by defendants and received by the court without objection by defendants for the sole and limited purpose of proving that the prior disciplinary actions had occurred. Given this record, no course of conduct has been proved, since the circumstances giving rise to the September 1970 disciplinary actions are not in the record.

Moreover, it does not appear that the circuit court ever ruled that the city could not rely upon a course of conduct to establish grounds for dismissal. Instead, it appears that the circuit court concluded that the events of April 24, 1971, discussed above, combined with the mere fact that two prior disciplinary actions had occurred, did not constitute cause for dismissal

within the meaning of the city charter. The circuit court stated:

> "Without knowing what the City Manager had in mind, it would appear to the Court that he was of the impression at the time he notified Mr. Lines of his dismissal that three strikes and he was out, which is not the basis for dismissal according to the Charter of the City of Milwaukie.
>
> "* * * * * *
>
> "With respect to the two disciplinary matters that occurred in September of 1970, those matters were disposed of. Mr. Lines was disciplined. Certainly there was nothing in this record to indicate that those are now a proper basis for his dismissal, and I find that there is nothing in the incident that occurred on April 24th, 1971, that under the terms of the Charter of the City of Milwaukie, and with which these defendants are bound, that indicates that there was cause for Mr. Lines' dismissal."

There is nothing in this record that presents any reason to reach a contrary result.

Affirmed.

THORNTON, J., dissenting.

I would reverse and remand with instructions to review the case in accordance with the standards for judicial review specified in ORS 242.804 (3).[1]

As the majority opinion points out, all the parties, as well as the court, 'got off on the wrong foot' in this case by erroneously assuming that the review was to

----

[1] ORS 242.804 (3) provides:

"The circuit court shall hear and determine such appeal in a summary manner. The hearing shall be confined to the determination of whether the order of removal, discharge, demotion or suspension made by the commission was made in good faith for cause. No appeal to such court shall be heard except upon such grounds."

be accomplished pursuant to chapter X, § 68, of the Milwaukie City Charter, rather than ORS 242.804.

Under ORS 242.804 (3), the circuit court, in reviewing the matter, is limited to conducting a summary hearing to determine "whether the order of * * * discharge * * * made by the commission was made in good faith for cause." An examination of the record, however, indicates that the proceeding in the circuit court was in fact tried as a de novo review of the matter under chapter X, § 68, of the City Charter. This was error.

The case at bar is similar in several respects to *Phillips v. State Bd. of Higher Ed.*, 7 Or App 588, 490 P2d 1005 (1971), Sup Ct *review denied* (1972), where the petitioner, a cafeteria worker at the Tongue Point Job Corps Center, was dismissed for using abusive language toward fellow employes. She appealed to the Public Employe Relations Board (PERB). PERB, erroneously assuming that it had the power of de novo review, ordered her reinstatement after a de novo hearing. The Board of Higher Education appealed to the circuit court which reversed PERB. This court affirmed the circuit court holding, inter alia: (1) PERB does not act in a de novo capacity and is not entitled to make a determination independent of the decision of the appointing authority; (2) the term "good faith for cause" as used in the statute (substantially identical with ORS 242.804) means sufficient cause proven on hearing after reasonable notice; (3) in order for PERB to reinstate a discharged employe it must find that the employer was not acting in good faith; (4) among other things that a court will examine in review of administrative agency action are whether the administrative board exercised its discretion judi-

ciously and not capriciously, and whether it arrived at any conclusion which was not clearly wrong.

It seems to me that the majority opinion now compounds the error below by reviewing the matter by the same erroneous standard in this court and concluding that the evidence supports the decision of the circuit court. This court would have no more authority than did the circuit court to review this matter contrary to ORS 242.804 (3). This is not only contrary to ORS 242.804 but contrary to what I have understood to be settled law in this state and elsewhere applicable to the judicial review of administrative actions. *See*, for example, *Ward v. Ore. State Bd. of Nursing*, 266 Or 128, 510 P2d 554 (1973); *Bay v. State Board of Education*, 233 Or 601, 378 P2d 558, 96 ALR2d 529 (1963); *Beistel v. Pub. Emp. Relations Bd.*, 6 Or App 115, 486 P2d 1305 (1971).

As I understand the majority opinion, it affirms the trial court here by applying the doctrine of invited error, holding that the defendants invited the basic error, namely, that judicial review was to be accomplished under the appeal provisions of the city charter rather than ORS 242.804.

But plaintiff rather than defendants committed the initial 'error' by bringing the suit under the appeal provisions of the city charter. Defendants appeared and defended the proceeding on the same erroneous basis. However, defendants' counsel in his closing argument to the court stated:

> "* * * Now, I think there is no dispute as to the fact that we are limited to cause and this is held in a case in which happens to be in Arizona, Smith vs. Lassen, 424 Pac. 2d, 856, where the Court has said that a Court is still limited to statutory rules

applying to Civil Service Commissions and that the Court cannot substitute its thinking or judgment for that of the Commission, if there is grounds for the cause that they [sic] should uphold that cause."

Defendants' counsel makes substantially this same contention in his brief in this court, notwithstanding a statement to the contrary in the majority opinion.

I do not believe therefore that the doctrine of invited error should be applied under the above circumstances.

Finally, although this point is not clear from my reading of the court's oral remarks at the conclusion of the case, if the trial judge intended to hold as a matter of law that defendants could not under chapter X, § 61, of the City Charter, also rely on the infractions involved in two prior disciplinary actions taken against plaintiff, as part of the grounds for dismissal, then I would hold this to be error also. *Phillips v. State Bd. of Higher Ed.,* supra; *West New York v. Bock,* 38 NJ 500, 186 A2d 97 (1962); *Rushin v. Bd. of Child Welfare,* 65 NJ Super 504, 168 A2d 238 (1961).