Argued December 20, 1974, reversed and remanded February 10, reconsideration denied March 19, petition for review denied May 20, 1975

# CITY OF BEAVERTON, *Petitioner, v.* INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS ET AL, *Respondents.*

531 P2d 730

294

*Donald C. Ashmanskas,* City Attorney, Beaverton, argued the cause and filed the brief for petitioner.

*Robert A. Petersen,* Portland, argued the cause for respondent International Association of Fire Fighters, Local 1660, Beaverton Shop. With him on the brief was Joseph F. Ceniceros, Portland.

*William F. Greer, Jr.,* Portland, argued the cause for respondent Beaverton Police Association. With him on the brief was Stanley E. Erickson, Portland.

No appearance for Beaverton Employees Association.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent Public Employe Relations Board. With him on the brief was Lee Johnson, Attorney General, Salem.

Orval Etter and Johnson, Johnson & Harrang, Eugene, submitted a brief amicus curiae for the City of Eugene.

Before Schwab, Chief Judge, and Foley and Thornton, Judges.

SCHWAB, C. J.

In 1971 the City of Beaverton enacted Ordinance 1700,[1] which is a comprehensive scheme governing labor relations between the city and its employes. The ordinance includes procedures for certifying bargain-

[1] Since 1971, Ordinance 1700 has been amended three times by Ordinances 1801, 1828 and 1841. The amendments are not significant here.

ing representatives, areas within the scope of collective bargaining and a provision forbidding strikes.

In 1973 the Oregon legislature enacted Oregon Laws 1973, ch 536, p 1166 (codified in part in ORS 243.650 to 243.782). The 1973 Act provides a comprehensive system governing labor relations, and by its terms applies to all public employers and employes in the state of Oregon. It includes requirements that collective bargaining take place on a broad range of issues; and creates the right to organize on the part of all public employes, a qualified right to strike on the part of all public employes except policemen, firemen and prison guards, and compulsory binding arbitration of disputes between public employers and the public employes who are forbidden to strike.

One provision of the 1973 Act, ORS 243.772, provides:

"Any provisions of local charters and ordinances adopted pursuant thereto in existence on October 5, 1973, and not in conflict with the rights and duties established in * * * [the 1973 Act] may remain in full force and effect after the board has determined that no conflict exists."

The effect of ORS 243.772 is to negate the provisions of any home rule charter and ordinances enacted under the charter in so far as those provisions conflict with the labor relations system enacted by the 1973 Act.

On December 28, 1973, the International Association of Fire Fighters, Beaverton Shop, obtained a hearing before the Public Employe Relations Board (PERB) under ORS 243.766[2] on the issue of whether

---

[2] ORS 243.766 provides:
"The board shall:
"(1) Establish procedures for, investigate and resolve any

there was a conflict between the 1973 Act and the Beaverton ordinance. In June 1974 the Board issued an order concluding that the differences between the Beaverton ordinance and the 1973 Act were so significant that by virtue of ORS 243.772 the entire ordinance was invalid. From this order the city appeals.

The dispositive issue is whether PERB was correct in interpreting ORS 243.772 as authorizing it to invalidate local legislation even if by so doing it deprived home rule cities of the power to legislate on

disputes concerning the designation of an appropriate bargaining unit.

"(2) Establish procedures for, resolve disputes with respect to, and supervise the conduct of elections for the determination of employe representation.

"(3) Conduct proceedings on complaints of unfair labor practices by employers, employes and labor organizations and take such actions with respect thereto as it deems necessary and proper.

"(4) Petition the appropriate circuit court for enforcement of any order issued by the board pursuant to ORS 243.650 to 243.782.

"(5) Hold such hearings and make such inquiries as it deems necessary to carry out properly its functions and powers, and for the purpose of such hearings and inquiries, administer oaths and affirmations, examine witnesses and documents and issue subpenas.

"(6) Conduct studies on problems relating to public employment relations and make recommendations with respect thereto to the legislative bodies; request information and data from state and county departments and agencies and labor organizations necessary to carry out its functions and responsibilities; make available to public employers, labor organizations, mediators, members of factfinding boards, arbitrators and other concerned parties statistical data relating to wages, benefits, and employment practices in public and private employment to assist them in resolving issues in negotiation.

"(7) Adopt rules relative to the exercise of its powers and authority and to govern the proceedings before it in accordance with ORS chapter 183."

matters in which their interest as distinguished from the state's is paramount. For the reasons which follow we hold that such an interpretation of ORS 243.772 is unconstitutional under the holding of *State ex rel Heinig v. Milwaukie et al,* 231 Or 473, 373 P2d 680 (1962).

The PERB's findings of fact accurately recite the differences between the provisions of the 1973 Act and some of the provisions of Beaverton Ordinance 1700. Among the more significant differences are:

(1) Under the ordinance, bargaining by the employers and employes is limited to "all matters relating to employe wages and related economic benefits." ORS 243.650(7) states that the subject matter of collective bargaining "includes, but is not limited to, matters concerning direct and indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment."

(2) The ordinance specifically prohibits strikes by any city employe. ORS 243.726 and 243.736 allow strikes under certain conditions by public employes except policemen, firemen and prison guards.

(3) The ordinance provides that if there is an impasse in contract negotiations, recommendations of a fact-finding committee are to be submitted to the city council which will make the final determination. Under ORS 243.742 in the event of an impasse between public employers and employes forbidden to strike, the parties must submit to binding arbitration.

(4) ORS 243.672 defines "unfair labor practices" and prohibits them. The ordinance contains no such provisions.

There are numerous other less significant differences.

■ Oregon's Constitution grants to cities the power to govern themselves. Art IV, § 1(5) provides:

"The initiative and referendum powers reserved to the people * * * are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district * * *."

Art XI, § 2, provides:

"Corporations may be formed under general laws, but shall not be created by the Legislative Assembly by special laws. The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitution and criminal laws of the State of Oregon * * *."

It has consistently been held that these two sections must be read and construed together and that they constitute a grant of home rule power to municipalities. *Schmidt et al v. City of Cornelius,* 211 Or 505, 316 P2d 511 (1957); *State v. Port of Astoria,* 79 Or 1, 154 P 399 (1916); *Branch v. Albee,* 71 Or 188, 142 P 598 (1914). Some older Oregon cases stated that because the above two sections constituted a limitation on the power of the legislature they should be strictly construed against a municipality. *State v. Port of Astoria,* supra; *Thurber v. McMinnville,* 63 Or 410, 128 P 43 (1912). However, this rule of construction was specifically rejected in *State ex rel Heinig v. Milwaukie et al,* supra, in which the court stated that in view of the fact that the grants of sovereignty to cities and to the state emanate from the same source,

"we do not think that there is room for a preference either way." 231 Or at 488.

██ The home rule provisions do not obviate the necessity for a city charter⑨ which defines the extent to which the people of a municipality choose to exercise the powers made available by the constitutional provision. A home rule city's power to act must be found in its charter as well as in the constitution. *Robertson v. Portland,* 77 Or 121, 149 P 545 (1915). The City of Beaverton's charter contains a broad grant of power. The charter reads:

> " *'Powers of the City.* The City shall have all the rights, powers, privileges, and immunities which the constitution, statutes, and common law of the United States and of this state expressly or impliedly grant or allow a municipality, including those rights, powers, privileges, and immunities which a city can exercise upon specifically accepting them or upon being granted the power to exercise them by the people of the city or the legislature of the State, as fully as though this Charter expressly stated each of those rights, powers, privileges, and immunities, and as though each of them had been specifically accepted by the City or granted to it by the people of the City or by the legislature of the State * * *.' Charter of the City of Beaverton, Ch 2, Sec 5 (Adopted 1962, as amended 1966)."

This general grant of power is followed by a list of more specific powers which are specifically stated to be not exclusive. The charter also contains a guide to its construction:

> " *'Construction of Charter.* This Charter shall be liberally construed to the end that the City shall have for the conduct of its municipal affairs all the powers contemplated by the municipal home rule

---

⑨ Or perhaps in lieu thereof, a general law. *See,* Davidson Baking Co. v. Jenkins et al, 216 Or 51, 56, 337 P2d 352 (1959).

provisions of the constitution and laws of the state.' Charter of City of Beaverton, Ch 2, Sec 7 (adopted 1962, as amended 1966)."

██ General grants of power contained in a city charter are sufficient to grant powers not specifically mentioned in the charter, particularly where the charter contains language saying that it is to be liberally construed. *Paget et ux v. City of Pendleton,* 219 Or 253, 346 P2d 1111 (1959); *see generally,* Etter, *General Grants of Municipal Power in Oregon,* 26 Or L Rev 141 (1947). The broad language contained in the Beaverton charter is effective to grant it the full extent of powers which the home rule amendments allow.

The central question is what legislative powers do the home rule amendments reserve to cities. Oregon courts have often interpreted the home rule amendments with somewhat diverse results. One line of cases holds that the amendments prohibit the state legislature from enacting special legislation dealing with the internal affairs of cities, but do not prevent the enactment of general legislation with respect to such internal affairs. *Burton v. Gibbons,* 148 Or 370, 36 P2d 786 (1934); *Rose v. Port of Portland,* 82 Or 541, 162 P 498 (1917); *City of McMinnville v. Howenstine,* 56 Or 451, 109 P 81, 12C Am Cas 193 (1910). A contrary line of cases holds that the legislature cannot enact even general legislation with respect to the internal affairs of cities. *City of Portland v. Welch,* 154 Or 286, 59 P2d 228, 106 ALR 1188 (1936); *In re Application of Boalt,* 123 Or 1, 260 P 1004 (1927); *Branch v. Albee,* supra; *Kalich v. Knapp,* 73 Or 558, 142 P 594, 145 P 22, 16E Am Cas 1051 (1914).

This conflict was resolved by *State ex rel Heinig v. Milwaukie et al,* supra, in which the court held:

"* * * [T]he legislative assembly does not

have the authority to enact a law relating to city government even though it is of general applicability to all cities in the state unless the subject matter of the enactment is of general concern to the state as a whole, that is to say that it is a matter of more than local concern to each of the municipalities purported to be regulated by the enactment * * *." 231 Or at 479.

*Heinig* dealt with a state law which required each political subdivision to set up a civil service commission covering fire department employes. The city of Milwaukie operated under a home rule charter which contained provisions regarding the hiring and firing of city employes, including firemen, but had no provision requiring the establishment of a civil service commission. The court held that the administrative machinery for the employment and discharge of firemen was a matter of primarily local concern, and that local law must prevail. The determination that this was a local matter was based on two separate lines of reasoning, both of which the court said would compel the result which it reached. The first basis of the decision was precedent—the court stated that *Branch v. Albee,* supra, would be controlling. In *Branch,* the issue was whether the state legislature could regulate the pensions which Portland would pay its policemen. The court held that the amount of police pensions, and the collection of revenue to pay these pensions, were matters of local concern. The court in *Branch* said:

"* * * As a policeman is elected or appointed by a city, and his salary is paid by a city, and most of his duties are municipal, he is, in a proper sense, a city officer, although he is a peace officer, and may make arrests under state laws." 71 Or at 201.

*Heinig* relied on this holding, stating that if police pensions were a local matter, there were even stronger reasons for holding the administration of a fire department to be a local matter, since the activities of firemen are more localized than those of policemen. 231 Or at 480.

The other basis for the holding of *Heinig* was the court's analysis of whether the issue was of sufficiently local concern to preclude action by the state legislature. The court set out the following test:

> "* * * 'The real test is not whether the state or the city has an interest in the matter, for usually they both have, but whether the state's interest or that of the city is paramount.'" 231 Or at 481, quoting from McDonald, American City Government and Administration 79 (3d ed 1949).

The court saw the purpose of the home rule amendments as

> "* * * to make operative the concept that the closer those who make and execute the laws are to the citizens they represent the better are those citizens represented and governed in accordance with democratic ideals * * *." 231 Or at 481-82.

*Heinig* holds that the decision as to whether a particular activity is a matter for regulation by the legislature or by a city is to be made by the court.

> "The constitutional recognition that the municipality is to have exclusive authority to legislate on some matters presupposes that we are able to decide whether a function is predominantly local or predominantly state-wide. Not being aided by any evidence on the question, we must make the choice solely upon the basis of our knowledge of the manner in which local and state governments operate and the relative importance of the function in question to the cities and to the state as a whole * * *." 231 Or at 483.

*Heinig* then goes on to say:

"In our opinion the administrative machinery by which the employment and discharge of city firemen is to be determined is a matter of local concern. The principal function of a city fire department is to provide fire protection within the city. On occasion the department may be called upon to assist in the suppression of fires outside of its limits, or it may engage in other cooperative extramural activities but this interrelation between the city and those benefited outside is not of such frequency and importance as to warrant describing it as a matter of state-wide concern.

"\* \* \* \* \* \*

"We are unable to see how the manner of the employment and discharge of the personnel of a city fire department is relevant in any substantial way to the function of the state in the field of fire protection. Granting that a compulsory civil service system for firemen would tend to improve the quality of the personnel in city fire departments throughout the state, it seems to us that considering the limited function which the city fireman performs outside the city there is not a sufficient justification for depriving the city of control over this aspect of the operation of city government. If the legislative assembly has the power to deprive the people of municipalities of self-government in this respect, it would be difficult to imagine an area of activity engaged in by the city which could not be similarly controlled." 231 Or at 484-85.

Finally, the court added an important caveat:

"\* \* \* It is not necessary to regard all of the activities of a municipal department as either local or state-wide; some of the activities may be predominantly local, whereas others may be predominantly state-wide. A statute standardizing fire hose couplings would very likely be held to be binding upon the various cities; whereas a statute stand-

ardizing the style of firemen's uniforms would not."
231 Or at 484-85.

In *Boyle v. City of Bend,* 234 Or 91, 380 P2d
625 (1963), the court held that where a city charter
contained provisions concerning improvement of
streets and the filing of objections with the city council
by property owners who were affected, but was silent
on the question of judicial review of the disposition of
these objections, the state judicial review statute ap-
plied. The court pointed out, however, that the pur-
pose and the amount of the assessment was a matter
of local concern.

The only later Supreme Court case on the
subject, *City of Woodburn v. Tax Com.,* 243 Or 633,
413 P2d 606 (1966), held that state law, not local law,
governed the manner in which the amount of a tax
levy must be expressed on a ballot. In the course of
so doing the court cited *Heinig* with approval and
emphasized that the amount of a local tax levy was a
matter of local concern. The specific issue was whether
or not the city could be required by state statute to
express the amount of the levy in dollars and cents
rather than in mills.

In *Lines v. City of Milwaukie,* 15 Or App 280,
515 P2d 938 (1973), Sup Ct *review denied* (1974), this
court considered whether the scope of judicial review
of the dismissal of a fireman was that specified in a
state statute or that specified in a local ordinance. We
held that the state standard prevailed, saying:

"* * * A home rule city has no power to ex-
pand or contract the jurisdiction of the circuit
courts of the state of Oregon.

"* * * * * *

"* * * While the *administrative* machinery

concerning employment of firemen is for the city to determine, once *judicial* machinery comes into play the state's interest is paramount." 15 Or App at 286-87.

*Boyle v. City of Bend,* supra, contains a footnote which reads:

"Dell v. City of Lincoln, 170 Neb 176, 102 NW2d 62, 73 (1960) states:

" ' "The preservation of order, the enforcement of law, the protection of life and property, and the suppression of crime are attributes of state sovereignty and matters of state-wide concern * * *.""

" '* * * * * *

" 'As we view it, statutes which are enacted for the transfer or protection of the property rights of every owner of real property in the state, or those in a proper municipal classification in this state, and the compensation which such owners are entitled to receive for the public use or disposal thereof as well, is of state-wide concern.'

"And in *In re Fortune,* 138 Ohio St 385, 35 NE2d 442 (1941), a statute permitting an appeal to the courts from the decision of a municipal civil service commission was held to embrace a matter of general concern although in Ohio municipal civil service generally is held to be a matter of local concern." 234 Or at 100.

The first paragraph from the quote in the *Boyle* footnote led us by way of dictum in *Von Walter of City of Canby,* 19 Or App 60, 526 P2d 599 (1974), decided on other grounds, to state that all matters affecting municipal police officers were of predominantly statewide concern. Our decision in *Von Walter v. City of Canby,* supra, while arriving at the correct result, erred in some of its

reasoning. We now conclude that any expression in *Von Walter* that the power of the city to regulate overtime compensation of its police officers is subordinate to state authority in this field should be expressly disapproved. As mentioned above, *Branch v. Albee*, supra, cited with approval in *Heinig*, dealt with matters of police administration, in particular police pensions, and stated that this was a matter of predominantly local concern. Even without *Branch v. Albee*, supra, it would be difficult to justify a distinction between local police departments and local fire departments. As *Heinig* pointed out, there may be some aspects of local fire departments in which the state has a predominant interest. This is obviously also true of local police departments. For example, perhaps minimum standards for police officers which the state regulates under ORS 181.610 to 181.990 are such. But there is no logical distinction between policemen and firemen with regard to such matters as the machinery for selection, retention, determination of compensation and retirement.

Clearly the 1973 labor relations legislation deals with many matters which are predominantly of local concern. It may also, although we need not make that determination here, deal with matters which under *Heinig* are predominantly matters of state concern. The 1973 Act applies to both home rule and non-home rule public employers. In so far as it deals with the latter, the home rule amendments have no relevance. Therefore, the effect of ORS 243.772 as relied upon by PERB here is to make the 1973 Act paramount in matters of predominantly local concern. This the constitution forbids and thus we must reverse the order of PERB which purported to invalidate in its entirety Beaverton Ordinance 1700, since that ordinance legis-

lates, at least in part, on matters of predominantly local concern. This holding does not prevent PERB from examining the ordinance section by section under the powers granted to it by ORS 243.766 and holding invalid those provisions, if any, which purport to govern matters of predominantly statewide concern and which are in conflict with the provisions of the 1973 Act.

Reversed and remanded.