570 P.2d 671 (1977)
30 Or.App. 405
Clyde BRUMMELL, Respondent-Cross-Appellant
v.
Donald CLARK, Mel Gordon, Alice Corbett, Dan Mosee, Dennis Buchanan, Multnomah County Commissioners, and William J. Radakovich, in His Capacity As Director of Records and Elections of Multnomah County, Appellants-Cross-Respondents.
Court of Appeals of Oregon.
Argued and Submitted October 24, 1977.
Decided October 27, 1977.
*672 John B. Leahy, County Counsel, Portland, argued the cause for appellants-cross-respondents. With him on the brief was Martin B. Vidgoff, Deputy County Counsel, Portland.
Paul C. Paulsen, Portland, argued the cause and filed the brief for respondent-cross-appellant.
Richard M. Botteri, Portland, filed a brief amicus curiae for the Citizens for Good Government, a political campaign committee.
Before SCHWAB, C.J., and THORNTON and JOHNSON, JJ.
SCHWAB, Chief Judge.
The issue presented by this appeal is whether an initiative measure proposing an amendment to a county charter may be submitted to the voters at a special election when the county charter so provides.
On August 3, 1977, the Director of Multnomah County's Division of Records and Elections certified to the Board of County Commissioners for Multnomah County (the Board) that initiative petitions had been *673 filed with him which had a sufficient number of validated signatures to place a measure proposing amendments to the county charter on the ballot. The petitions specified that the election on the initiative measure was to be held on May 23, 1978, the date of the next statewide primary election. On August 9, 1977, in response to citizen requests, the Board ordered a special election on November 8, 1977, for submission of the initiative measure to the voters.[1]
Plaintiff brought an action for declaratory judgment seeking a declaration that any action taken by the defendant to conduct an election on the initiative proposing amendments to the county charter was unlawful and void and seeking an injunction restraining the defendants from conducting a special election on the initiative. The trial court granted plaintiff's motion for summary judgment and ordered that the defendants conduct the election on the initiative measure on May 23, 1978, instead of on November 8, 1977.
ORS 203.720 provides:
"The legal voters of any county, by majority vote of such voters voting thereon at any legally called election, may adopt, amend, revise or repeal a county charter. The charter, or legislation passed by the county pursuant thereto, shall provide a method whereby the legal voters of the county, by majority vote of such voters voting thereon at any legally called election, may amend, revise or repeal the charter. The county charter and legislative provisions relating to the amendment, revision or repeal of the charter are deemed to be matters of county concern and shall prevail over any conflicting provisions of ORS 203.710 to 203.790 and other state statutes unless otherwise specifically provided by conflicting state statutes first effective after January 1, 1961."
ORS 203.710(3), effective August 9, 1961, provides:
"As used in ORS 203.710 to 203.790, unless the context requires otherwise, `legally called election' means any primary or general election held throughout the county."
Plaintiff argues that ORS 203.720 and 203.710(3), read together, prohibit an initiative measure proposing an amendment to a county charter from being submitted to the voters at a special election. Defendant disagrees with that interpretation and also argues that the conduct of elections on initiative measures amending a county charter is governed not by ORS 203.720, but by ORS 203.780, which provides in pertinent part:
"(1) This section, pursuant to section 10, Article VI, Oregon Constitution, describes the manner by which the initiative *674 and referendum powers reserved to the legal voters of every county relative to the adoption, amendment, revision or repeal of a county charter and to legislation passed by counties which have adopted such a charter may be exercised. For the purposes of this section `county legislation' means the adoption, amendment, revision or repeal of a county charter and legislation passed by counties which have adopted such a charter.
"(2) * * * ORS 254.030, 254.042, 254.060 to 254.100, 254.110 to 254.170 and 255.410 to 255.430 and 255.440 shall apply in every county in all matters concerning the operation of the initiative and referendum in its county legislation, on which the county has not made or does not make conflicting provisions.

"* * *." (Emphasis supplied.)
ORS 203.780, defendant contends, permits a county to conduct a special election on an initiative proposing amendments to its charter as long as the county has provided for such a procedure in its charter or ordinances.
ORS 203.720 and 203.780 were both enacted by the Oregon Legislative Assembly as part of chapter 527 of Oregon Laws 1959. The House Committee on Local Government, referring to ORS 203.720, stated:
"* * * The third sentence of [ORS 203.720] recognizes, in other words, that the legislature considers the amendment, revision or repeal of a charter (as distinguished from its adoption) to be a matter of county concern unless, after 1961, the legislature otherwise specifically provides." House Committee on Local Government, "Explanation of House Bill No. 616," § 2 (1959).
The House Committee characterized ORS 203.780 as
"* * * a description of the method by which, independent of any other method, the legal voters of a county may adopt a charter by the initiative method or, absent county legislation providing for the exercise of the initiative and referendum powers, may amend, revise or repeal a charter by initiative or referendum. * * *" (Emphasis supplied.) House Committee on Local Government, "Explanation of House Bill No. 616," § 9 (1959).
The legislative history of both ORS 203.720 and 203.780 and the plain language of both statutes indicate that the legislature intended that county charter and legislative provisions regarding the amendment of its charter should be given precedence over any conflicting state provisions. Hence, we cannot permit a state statutory provision to prevail unless we deduce a clear intent on the part of the legislature to specifically preempt a conflicting county provision. In this case, the fact that the legislature enacted ORS 203.710(3), defining "legally called election" as used in ORS 203.720, cannot be taken to mean that it intended to specifically prevent counties from amending their charters other than at primary or general elections. The definition contained in ORS 203.710(3) governs only in the absence of contrary county law. We need not reach defendant's contention that ORS 203.780 exclusively governs the procedures to be followed in amending a charter by initiative measure.
Plaintiff next argues that the county could not amend its charter at a special election on an initiative measure because the Board does not have the power to order a special election. Plaintiff relies on Multnomah County Ordinance No. 57, § 5 A 1 d which states:
"A. Electors within Multnomah County shall submit petitions in the following manner:
"1. * * * The preliminary petition must state:
"* * *
"d. The date of the election, which must be the next succeeding state-wide primary or general election, whichever is sooner."
Plaintiff contends that this section of the ordinance prohibits the Board from conducting a special election. Defendant, on the other hand, contends that § 11 A of Ordinance No. 57 permits the Board to conduct a special election:

*675 "A. The Board may, in response to receipt of certification of the Director that a qualified petition has been filed * * * call a special election at which time a measure would be submitted to a vote of the people."
The Multnomah County Home Rule Charter, § 11.50, provides that it may be amended either at a regular or special election:
"(1) This charter may be amended or repealed by the voters of the county at
"(a) a regular election or
"(b) a special election called by the board of county commissioners.
"(2) An initiative petition to submit a charter amendment or repeal to the voters shall be filed with the department of records and elections at least 90 days before the election at which the measure is to come before the voters.
"* * *."
The charter of a county bears the same general relation to its ordinances that the constitution of a state bears to its statutes. A county board of commissioners "`cannot lawfully exceed its legislative authority defined and limited by the charter under which it acts.'" Robertson v. Portland, 77 Or. 121, 128, 149 P. 545, 547 (1915). See Fisher et al. v. City of Astoria, 126 Or. 268, 280, 269 P. 853 (1928); Beaverton v. I.A. Fire Fighters, 20 Or. App. 293, 300, 531 P.2d 730 (1975). Thus, a county ordinance may not conflict with its county authorizing charter. 5 E. McQuillin, The Law of Municipal Corporations, § 15.19, at 79 (3d rev. ed. 1969).
Section 5 A 1 d of Ordinance No. 57 appears, on its face, to conflict with § 11.50 of the county charter authorizing special elections. In view of the supremacy of the charter provisions, we do not interpret § 5 A 1 d as prohibiting the Board from conducting a special election. Instead, we read § 5 A 1 d as fixing the latest date on which an election on the matter presented in the initiative petition may be conducted. This section, we believe limits the maximum time which can elapse between the circulation of an initiative petition and the ultimate vote on the measure presented by the petition in order to prevent the subject matter of the initiative from becoming outdated. This interpretation is buttressed by the fact that preservation of the timeliness of issues presented by initiative petitions is a subject of another provision of Ordinance No. 57, namely § 9 B 2:
"No petition shall be accepted for filing unless the signatures thereon have been secured within six months of the date on which the first signature on the petition was affixed."
Seufert et al. v. Stadelman et al., 178 Or. 646, 167 P.2d 936 (1946), does not compel a contrary conclusion. In Seufert, the Supreme Court dealt with a situation where a city counsel wished to hold an election on an initiative petition after the date mentioned on the face of the petition. The court stated:
"In our judgment it is not mandatory upon the council to call an election for the date mentioned in the petition, if, in its legislative discretion, another date is more suitable. If another date is selected, however, it should approximate the requested date as nearly as may be. * * [I]t is to be observed that, if an election upon a proposed initiative measure could be held only upon the date mentioned in the petition, it would always be possible, by resort to delays and obstructive tactics, to defeat the right of the people to vote thereon. To permit such tactics would, of course, be contrary to the spirit and intent of the constitution. * * *" 178 Or. at 656-57, 167 P.2d at 940.
Seufert does not prevent us from holding that the Board may select an election date before the date indicated in the initiative petition. The Supreme Court in Seufert was concerned about a city council's attempt to delay an initiative election in order to postpone electoral consideration of the issues presented. In this case, the Board action advancing the date of the election cannot be said to defeat the right *676 of the county electorate to vote in the issues presented. While the people who signed the petitions in this case would have been more precisely informed if § 5 A 1 d of Ordinance No. 57 permitted, and the petitions had contained a statement, setting the date of May 23, 1978 as the last date on which an election could be held, we cannot discern any prejudice flowing from its absence.
Finally, on cross-appeal plaintiff contends that even if the county could conduct a special election on the initiative measure, the proposed measure is unconstitutional in that it embraces more than one subject, a violation of Article IV, § 1(2)(d), of the Oregon Constitution.[2] An initiative measure to be voted upon by the electorate is no different than a measure pending before the Legislative Assembly. Consequently,
"* * * [w]here all statutory requirements have been complied with [for placing an initiative measure on the ballot], * * * the people alone are authorized to determine whether the proposed measure shall be enacted into law, and if the measure, when enacted is unconstitutional, then only have the courts power to declare it to be unconstitutional. * * *" State ex rel. Carson v. Kozer, 126 Or. 641, 647, 270 P. 513, 515 (1928).
We thus cannot reach the constitutionality of the initiative measure at this time. See Oregon AFL-CIO v. Weldon, 256 Or. 307, 312, 473 P.2d 664 (1970); Johnson v. City of Astoria et al., 227 Or. 585, 591, 363 P.2d 571 (1961).
We find no legal impediment to holding the election on November 8, 1977.
Reversed.
THORNTON, Judge, dissenting.
This appeal presents a classic dilemma in the field of statutory interpretation, namely, how to resolve an ambiguity involving several statutory provisions which are directly in conflict with each other. Here the dilemma is further complicated by the involvement of county charter and ordinance provisions as well as state statutes dealing with the subject.
Contrary to the majority, I would affirm the decision of the trial court. While I disagree with some of the trial judge's reasoning in arriving at his decision, nevertheless I am of the opinion that he reached the correct conclusion, namely, that the election in issue must be held on the date set forth in the initiative petition, which is May 23, 1978.
In my view the controlling legislation in this case is § 5 A 1 d of Multnomah County Ordinance No. 57, which expressly provides:
"1. * * * The preliminary petition must state:
"* * *
"d. The date of the election, which must be the next succeeding state-wide primary or general election, whichever is sooner."
The majority treats the above language as simply a provision fixing a maximum time within which the election must be held. I cannot agree.
To hold as the majority does that the Board of County Commissioners, acting pursuant to their authority under chapter XI, § 11.50 of the Multnomah County Home Rule Charter, may reschedule the election six months earlier, not only abrogates § 5A, it violates the rights of all voters in Multnomah County and is repugnant to the fundamental scheme of the right of initiative referendum and recall guaranteed to the citizens of the state by Art. IV, § 1, and Art. VI, § 10, Oregon Constitution.
I recognize that there is a direct conflict between the provisions of § 5A and § 11A of Ordinance No. 57, and § 11.50 of the charter. Where I differ with the majority is that I believe that this conflict should be resolved in favor of allowing the broadest *677 possible exercise by the people of their constitutional right of initiative. Othus v. Kozer, 119 Or. 101, 248 P. 146 (1926).
As our Supreme Court said in State ex rel. v. Hoss, 143 Or. 383, 389, 22 P.2d 883, 885 (1933), in discussing the right of initiative,
"Election laws should be liberally construed to the end that the people may have the opportunity of expressing opinion concerning matters of vital interest to their welfare. * * *"
Accordingly, in reaching our decision we should in my view take judicial notice of facts showing the practical effect in terms of voter participation of advancing the date of this election. According to the plaintiff's brief:
"* * * There were 256,645 voters in Multnomah County at the last general election which adopted the amendment which the friend of the Court seeks to have repealed. The last special election throughout the County and the State of Oregon was on May 17, 1977. There were only 84,624 ballots cast in Multnomah County at that special election. * * *"
I agree with the majority that the trial judge erred in concluding that ORS 203.720, 203.710(3) and 203.780 were controlling. I also agree with the majority that the county's legislation superseded state law on the subject. Further I agree with the trial judge and the majority that Seufert et al. v. Stadelman et al., 178 Or. 646, 167 P.2d 936 (1946), while instructive is not controlling here. As the trial judge in the case at bar pointed out, however,
"* * * the Court in Stadelman, while it held that it was not mandatory for the Council to call the election on the date mentioned in the Petition, the Court went on to say that: `If another date is selected, however, it should approximate the requested date as nearly as may be.' Under no stretch of the imagination can it be said that November 8th, 1977, the date selected by the Commission for the election in the instant case approximates the date requested in the petition, May 23rd, 1978."
The crux of my disagreement with the majority is that I cannot accept the majority's conclusion that the county's legislation permits the Board of County Commissioners to advance the date of the election some six months notwithstanding the clear mandate of § 5 A of Ordinance No. 57, which states that the election must be "[t]he date of the * * * next succeeding state-wide primary or general election, whichever is sooner."
Here the people who signed these petitions were informed by the notice on the face of each petition that they were petitioning for an election to be held on May 23, 1978. Presumably all were made aware of this fact. There is no evidence that the persons who signed such petitions would have signed the same for a special election to be held November 8, 1977.
Even apart from the requirement of § 5 A, to allow the election to be moved up to a date some six months earlier represents a breach of faith with the signers of the petition, amounting to, as it were, `moving the goal posts after the game has gotten under way.' Further, as the trial judge pointed out, it deprives the opponents as well as the proponents of these charter amendments of a reasonable opportunity to publicize and educate the voters of the county as to the pros and cons of these proposed amendments.
Summarizing, in my view the initiative right of the voters is paramount and the right of the county commissioners to call a special election vote on amendments to the charter under § 11.50 and § 11 A of the ordinance must be construed as being subordinate to the constitutional right of the people under Art. IV, § 1, and Art. VI, § 10, Oregon Constitution.
A somewhat analogous question was presented to the Attorney General in 12 Op.Att'y Gen. 622 (Or. 1926), involving initiative petitions for a capital punishment state constitutional amendment and calling for a statewide election to be held on the first Tuesday after the first Monday in *678 November, 1924. The Attorney General ruled that initiative petitions must be signed and filed with reference to a specified election on a specified date and unless those petitions were so filed and the election so held they were of no further effect.
For the above reasons I respectfully dissent.
NOTES
[1] The Multnomah County Board of Commissioners' order reads in pertinent part:

"WHEREAS, the Board of County Commissioners of Multnomah County, Oregon, has received certification from the Director of the Division of Records and Elections of the Department of Administrative Services that a qualified petition proposing an amendment to the Multnomah County Home Rule Charter has been filed; and
"WHEREAS, the Board has been requested by electors of Multnomah County at a regular meeting held by the Board on August 2, 1977, to submit the Home Rule Charter Amendment proposed by initiative petition to the legal voters of Multnomah County at a Special Election to be held on the earliest lawful date pursuant to Ordinance No. 57, § 11; and
"WHEREAS, the 8th day of November, 1977, is the same day upon which a state-wide election will be held and is the earliest date on which an election can be held in compliance with applicable laws; and
"WHEREAS, the Board finds that calling a Special Election on November 8, 1977, concurrently with the statewide election, will enable Multnomah County to share the costs of the election with the state, resulting in a substantial saving of money to the county, and
"WHEREAS, the Board finds that calling a Special Election at the earliest possible date is in the public interest because it will result in the early determination of the structure of county government for the 1978 elections and, if the measure is passed, will allow more time for the work of the Charter Review Committee; now, therefore, it is
"ORDERED:
"1. An election is hereby called to be held concurrently with the statewide election on November 8, 1977 * * *."
[2] Oregon Constitution, Art. IV, § 1(2)(d), provides:

"* * * A proposed law or amendment to the Constitution shall embrace one subject only and matters properly connected there with."