136 N.J. Super. 180 (1975)
345 A.2d 346
WARREN PARK ESTATES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EAST WINDSOR, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 9, 1975.
Decided September 22, 1975.
*181 Before Judges HALPERN, CRANE and MICHELS.
Mr. David A. Friedman argued the cause for appellant (Messrs. Ridolfi and Friedman, attorneys).
Mr. Charles A. Zahn argued the cause for respondent (Messrs. Warren, Goldberg & Berman, attorneys).
The opinion of the court was delivered by HALPERN, P.J.A.D.
Plaintiff Warren Park Estates, Inc. appeals from a summary judgment entered in favor of defendant, East Windsor Township sustaining the validity of defendant's amended building code ordinance which required the installation of copper electric wiring in all new buildings.
The facts are undisputed. Plaintiff, a housing developer, was about to commence erection of 110 single-family homes *182 pursuant to an approved subdivision when the building code ordinance was amended to require copper electric wiring for home installations of the type contemplated by plaintiff. Its plans and specifications for the contemplated development, as submitted to sub-contractors, called for aluminum electric wiring, as specified by the National Electric Code and adopted as the controlling standard by the New Jersey Public Utility Commission (P.U.C.) by its regulations, N.J.A.C. 14:5-7.5(g) and 14:5-7.9. It brought this declaratory judgment suit to set aside and declare void that portion of respondent's building code which mandated the use of copper electric wiring, on the theory that the P.U.C. had preempted this field.
The trial judge, in granting summary judgment and rejecting plaintiff's contentions, relied upon In re Adoption of Regulations, 127 N.J. Super. 295 (App. Div. 1974), and stated:
The attempt by P.U.C. to pre-empt the power of a municipality I find to be ultra vires, that the statute applies and I hasten to add that I do not consider this decision, the decision is based on the law as I interpret it to be even though it doesn't make very much sense to me that the state of the law as I find it to be permits the P.U.C. to regulate cities and counties in certain instances and not to be able to regulate municipalities or counties in other instances but that is a matter not for me but for legislative or appellate action.
Consequently the motion for summary judgment brought by the defendant is granted. The motion brought by the plaintiff is denied both without costs.
We disagree with his conclusions and reverse.
The legislative history concerning standards for installation and inspection of electrical wiring for buildings is fully recited in Judge Kolovsky's opinion for this court, relied upon by the trial judge and reported in 127 N.J. Super. 295, and therefore will not be restated herein. It will suffice for us to note that the holding therein is not inconsistent with the views expressed herein.
The narrow issue before us, as we view it, is whether the general powers given to all municipalities, in N.J.S.A. *183 40:48-1 and the provisions in N.J.S.A. 45:5A-17, to enact ordinances to regulate and inspect the erection, alteration or repair of structures, has been preempted by the State with respect to the standards applicable for the installation and inspection of electric wiring in private homes in East Windsor Township.
Pursuant to statute, all electrical contractors in this State must be qualified and licensed. Under N.J.S.A. 48:7-14, effective June 24, 1971, the P.U.C. must approve all electrical inspection authorities for the inspection of construction work done by all licensed electrical contractors. In addition, the P.U.C. is specifically "authorized to promulgate all rules and regulations necessary to effectuate the purposes of this act." In accordance with such authorization the P.U.C. adopted N.J.A.C. 14:5-7.5(g), which provides
(g) No county, city or municipality shall adopt any electrical code that is not consistent with the National Electrical Code, and the rules or regulations for wiring of the utility or the existing standards and regulations of the Board.
Admittedly, the National Electrical Code permits the use of aluminum electrical wiring for private homes.
The reported cases on preemption afford no precise guidelines covering the instant appeal; each case of necessity must turn on the peculiarities and special features of the state regulatory scheme in question. We are convinced from our study of the statutes and regulations involved herein that the Legislature has recognized the continuing vital importance of electric energy, the installation and inspection of facilities for its use, as being for the public good and safety, and that the licensing of those who install such power, the materials used and the inspection of work done, requires uniform state treatment. This is evident from the broad regulatory powers given the P.U.C. by the Legislature over all public utilities serving the public with electric power, the supervision over electrical contractors who must cut into main power sources for home use and the necessity of its *184 approving all inspection authorities. In addition, the power delegated by the Legislature to cities and counties (N.J.S.A. 40:173-1 and N.J.S.A. 40:23-20) to regulate the inspection of electrical wiring, etc., specifically directed that such not be inconsistent with the National Electrical Code or the standards fixed by the P.U.C. In short, the subject of electric power and the standards for its installation and use, was thought by the Legislature to require uniformity of treatment, whereas a variety of local regulations on the subject might well defeat a considered State policy. Summer v. Teaneck Tp., 53 N.J. 548, 552-553 (1969); In re Public Service Elec. & Gas Co., 35 N.J. 358, 370-371 (1961). Any attempt to fix differing standards between cities and counties on the one hand, and all other municipalities on the other, would only result in unsupportable inequities.
Therefore, in preemption cases, we must determine whether a local ordinance prohibits that which state law permits or, stated another way, does a local ordinance exert delegated police powers in terms which conflict with a state law. Our conclusion is that the building code ordinance in question mandating the use of copper electric wiring is facially invalid and in contravention of an expressed legislative plan to impose the obligation of regulating the electrical industry upon the P.U.C. See So. Ocean Landfill v. Ocean Tp. Mayor & Council, 64 N.J. 190 (1974); State v. Ulesky, 54 N.J. 26, 29 (1969).
The judgment is reversed and so much of respondent's building code which requires plaintiff to use copper electric wiring is declared invalid.