Argued September 28, reversed December 20, 1976, reconsideration denied
January 26, petition for review allowed May 24, 1977
See later volume of Oregon Reports

CITY OF HERMISTON, *Petitioner,*

*v.*

EMPLOYMENT RELATIONS BOARD et al,
*Respondents.*

(No. C-75-75, CA 6348)

557 P2d 681

*Rustin A. Brewer,* Hermiston, argued the cause and filed the brief for petitioner.

*W. Michael Gillette,* Solicitor General, Salem, argued the cause for respondent Employment Relations Board. With him on the brief were Lee Johnson, Attorney General, and Catherine Allan, Assistant Attorney General, Salem.

*William F. Greer,* Tualatin, argued the cause for respondent Hermiston City Police Association. With him on the brief were Erickson & Greer, Tualatin.

*Liana Colombo, Henry H. Drummonds,* and Kulongoski, Heid, Durham & Drummonds, Eugene, filed a brief amicus curiae for Public Employees Council 75, AFSCME, AFL-CIO, on behalf of respondent Employment Relations Board.

*Don S. Willner,* and Willner, Bennett, Riggs & Skarstad, Portland, filed a brief amicus curiae for Oregon State Fire Fighters Council.

Before Schwab, Chief Judge, and Fort and Lee, Judges.

SCHWAB, C. J.

## SCHWAB, C. J.

In a three-to-two decision, the Employment Relations Board (ERB) ruled that state statutes governing public employe collective bargaining, ORS 243.650 et seq, preempt the field and displace a different employer-employe relations scheme created by a City of Hermiston ordinance. The city appeals, contending that ERB's decision is in error under the home rule amendments to the Oregon Constitution.[1]

Under the Hermiston ordinance, an employe organization can petition for certification as the representative of a group of employes.[2] The city manager and city council decide various questions relating to the appropriateness of the unit of employes proposed to be represented.[3] If the employe organization suc-

---

[1] Oregon's Constitution grants to cities the power to govern themselves. Art IV, § 1(5) provides:

"The initiative and referendum powers reserved to the people * * * are further reserved to the qualified voters of each municipality and district as to all local, special and municipal legislation of every character in or for their municipality or district * * *."

Art XI, § 2, provides:

"Corporations may be formed under general laws, but shall not be created by the Legislative Assembly by special laws. The Legislative Assembly shall not enact, amend or repeal any charter or act of incorporation for any municipality, city or town. The legal voters of every city and town are hereby granted power to enact and amend their municipal charter, subject to the Constitutional and criminal laws of the State of Oregon * * *."

[2]
"(1) Any employee organization desiring to represent a group of employees in consultations held in accordance with this ordinance may petition the City Council for a representation election * * *.

"* * * * *

"(2) The representation petition shall be supported by the signatures of at least 50 per cent of the employees in the proposed appropriate unit. The signatures shall be placed upon the representation petition and the petition shall bear the date that the signatures were obtained. All employee signatures must have been placed upon the representation petition within 60 days immediately preceding submission of said petition.

"* * * * *." Ordinance No. 867, Section 5.

[3]
"(5) The City Manager shall make the final determination as to what employees, if any, in the proposed appropriate unit shall be

cessfully leaps these hurdles, a representation election follows. If a majority of the employes vote for representation by the employe organization, an "Employee Representative" and a "City Representative" then engage in a "consultation" process. "The scope of consultation between the City Representative and Employee Representative shall include all matters relating to employee wages and related economic benefits * * *." Hermiston Ordinance No. 867, Section 4.

The consultation process may result in a "Memorandum of Understanding," which is apparently not binding on the city or the employe organization.[4] If the parties cannot agree, the Hermiston ordinance spells out "impasse procedures," despite the fact that the presence or absence of agreement is apparently without legal effect.

By contrast, the state statute is less stringent in its requirements for an employe-organization petition for certification.[5] If the petition is sufficient, ERB determines the appropriate bargaining unit and conducts

considered management or confidential employees. If that determination affects the representation petition, then the employee organization shall be notified and it may amend its petition. The verification of the representation petition shall be forwarded to the City Council immediately.

"(6) After receiving the representation petition, and after the City Manager has notified the City Council that the petition meets the requirements of this Section, the City Council shall then determine whether the petitioner is a bona fide employee organization, whether the unit within which the election is sought is an appropriate unit, and any other questions relating to the subject matter * * *.

"* * * * *." Ordinance No. 867, Section 5.

[4] "(5) Upon completion of consultations, a 'Memorandum of Understanding' shall be prepared by the City Manager and signed by the City Manager and the Employee Representative. The signed 'Memorandum of Understanding' shall be forwarded to the City Council for its acceptance, rejection or modification and acceptance.

"* * * * *." Ordinance No. 867, Section 9.

[5] ORS 243.682 requires a representation petition filed with ERB to be accompanied by a 30 percent showing of interest.

[ 758 ]

the representation election.[6] An employe organization which wins the election and the public employer then have a duty to collectively bargain in good faith.[7] Bargaining can cover more than purely economic issues,[8] and culminate in an agreement binding on the parties. The Employment Relations Board is available as an impartial tribunal to monitor and police the negotiation and performance of the agreement—either party being able to file unfair labor practice complaints against the other.[9] The state statute also provides mediation, factfinding and arbitration procedures.[10]

As is apparent, the state statutes extend greater rights to public employes and impose greater duties on public employes than does the Hermiston ordinance.

This case arose when the Hermiston City Police Association sought certification as a bargaining representative. After some initial confusion about whether the Association should present its petition to the city or to ERB, matters developed so that both the city and ERB passed upon the petition. ERB determined that the appropriate bargaining unit consisted of all city police department employes except the Chief and Lieutenant. The Hermiston City Manager determined

---

[6] ORS 243.682 and 243.686.

[7] ORS 243.650(4) defines collective bargaining as:

"* * * [T]he performance of the mutual obligation of a public employer and the representative of its employes to meet at reasonable times and confer in good faith with respect to employment relations, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party. However, this obligation does not compel either party to agree to a proposal or require the making of a concession."

[8] ORS 243.650(7) requires bargaining on "matters concerning direct or indirect monetary benefits, hours, vacations, sick leave, grievance procedures and other conditions of employment." *See Springfield Ed. Assn v. Sch. Dist.,* 24 Or App 751, 547 P2d 647, *modified* 25 Or App 407, 549 P2d 1141, Sup Ct *review denied* (1976); *Sutherlin Ed. Assn v. Sch. Dist.,* 25 Or App 85, 548 P2d 204 (1976).

[9] ORS 243.672 and 243.676.

[10] ORS 243.712, 243.722 and 243.742.

that the appropriate unit consisted of all city police department employes except the Chief, Lieutenant and two Sergeants.[11]

Far more is at stake here, however, than the inclusion or exclusion of two Sergeants. And more is at stake than the narrow question of whether ERB or the Hermiston City Manager will designate a bargaining unit and conduct a representation election. Hermiston contends that, as a home rule city, it is for it alone to govern itself by determining the format of its ongoing relations with its own employes.

We first confronted a similar claim in *Beaverton v. I. A. Fire Fighters,* 20 Or App 293, 531 P2d 730, Sup Ct *review denied* (1975). That case, as does this one, involved conflicts between the state public labor relations statute and a home rule city's ordinance dealing

---

[11]The state statute does not permit representation of confidential or supervisory employes, which are defined as:

" 'Confidential employe' means one who assists and acts in a confidential capacity to a person who formulates, determines and effectuates management policies in the area of collective bargaining." ORS 243.650(6).

" 'Supervisory employe' means any individual having authority in the interest of the employer to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employes, or having responsibility to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection therewith, the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment * * *." ORS 243.650(14).

The Hermiston ordinance does not permit representation of confidential or management employes, which are defined as:

"(8) *Employee, Confidential.* Any employee who is privy to decisions of city management affecting employer-employee relations. Confidential employees shall be designated by the City Manager.

"(9) *Employee, Management.* Any employee having significant responsibilities for formulating and administering city policies and programs, including but not limited to the City Manager and department heads; and any employee having authority to exercise independent judgment to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward or discipline other employees, or having the responsibility to direct them, or to adjust grievances, or effectively to recommend such action if in connection with the foregoing, and the exercise of such authority is not of a merely routine or clerical nature but requires the use of independent judgment. Management employees shall be designated by the City Manager." Ordinance No. 867, Section 3.

with the same subject. We held the state "legislation deals with many matters which are predominantly of local concern" and would thus be invalid as applied to home rule cities and counties. 20 Or App at 307. We remanded for a "section by section" comparison of the state statute and local ordinance to determine which governed matters of statewide versus local concern. 20 Or App at 308.

We are now persuaded that our remand in *Beaverton* was ill-advised. As is apparent from the above summaries of the state statute and Hermiston ordinance, each is a comprehensive, integrated whole creating very different employer-employe relations schemes. It now appears impossible to logically consider specific provisions from either the statute or ordinance without regard to the whole. Moreover, the end product of such an effort would probably be an unworkable ordinance/statute hybrid. The determination of an appropriate bargaining unit and election of a representative are fundamental and indivisible parts of both the Hermiston ordinance and the state statute. One or the other must prevail.

■ This question of which prevails is to be answered by applying the test of *State ex rel Heinig v. Milwaukie et al,* 231 Or 473, 373 P2d 680 (1962), which requires the courts to: (1) identify the city's interest; (2) identify the state's interests; and (3) balance them to determine which predominates.

■ The city's interest is that of an employer—the entity that determines staffing needs, hires, pays and occasionally fires its employes. The Hermiston City Charter, in addition to a general reservation of local power,[12] authorizes the city council to determine staffing needs and fix compensation, and authorizes the

---

[12] *"Powers of the City.* The city shall have all powers which the constitution, statutes, and common law of the United States and of this state expressly or impliedly grant or allow municipalities as fully as though this charter specifically enumerated each of these powers." Hermiston Charter, Chapter II, Section 4.

city manager to hire, transfer and terminate non-elected city employes.[13] Hermiston's interest is to have control over the formation, performance and termination of employment contracts, free from interference from outside sources, such as ERB, who may not know of, for example, the city's peculiar fiscal situation.

*Heinig* indicates these local interests are substantial. There the question was whether the state could control a local civil service system, i.e., the administrative machinery whereby local hiring and firing decisions were made. Here the question is whether the state can control the administrative machinery used to determine the terms and conditions of employment during the ongoing course of employment. If, as *Heinig* holds, local interests predominate on the question of how hiring and firing decisions will be made, local interests would seem at least as strong on the question of how terms of employment are defined and redefined between the beginning and the end of the employment relationship.

A variety of arguments is presented for a contrary conclusion. Some of them seem to claim a predominant state interest in controlling collective bargaining involving *all* local employes, presumably including water-meter readers, secretaries, groundskeepers, etc. Others only claim a predominant state interest for employes in vital service areas, like fire and police.

---

[13] "*Salaries.* The council shall fix the compensation for each member of the council, mayor, city manager, recorder, municipal judge and all other city officers and employes." Hermiston Charter, Chapter III, Section 12.

"*City Manager.* * * *.

"* * * * *

"He shall appoint all officers and employes except the municipal judge, and treasurer and remove tham [sic] at pleasure, and have general supervisi⌐ and control over them and their work with power to transfer an employe from one department to another, and shall exercise supervision and control over the departments to the end of obtaining the utmost efficiency in each of said departments. He shall have no control, however, over the council, the treasurer, or the judicial activities of the municipal judge.

"* * * * *." Hermiston Charter, Chapter V, Section 20a.

We are told that state control over all employment relationships will promote employe morale and efficiency. At best, the state interest in this regard is not dominant. *See State ex rel Heinig v. Milwaukie et al, supra.*

There is a claimed need for statewide uniformity. ERB's decision states uniformity "will minimize labor disputes and maximize peaceful resolution of those disputes that do arise." We are never told how or why; our own powers of reasoning have not been able to supply answers. Moreover, empirical data should be available to support this conclusion. Before 1973 there was no attempt to create a uniform local public employer-employe collective bargaining scheme. If data exists to show more local labor strife before 1973 than since then, it has not been called to our attention.

Ultimately, this "uniformity" argument is only a claim that the state scheme is wiser or better than the local scheme. This is irrelevant in applying the home rule provisions of the Oregon Constitution.

ERB's decision points out that actions of neighboring local governments have increasingly great impacts on each other and the state as a whole; that other units of government may have to step in if city services were disrupted by a labor dispute. The interdependency point is well taken; but at least for nonvital services it is insignificant as a state interest. The possibility of water-meter readers, secretaries or groundskeepers being hastily summoned from one community to another to replace strikers is simply too remote. Furthermore, the interdependency point may prove too much, because it could rapidly be carried to an extreme that would leave nothing within the exclusive control of the home rule cities and counties.

The state's interest in controlling collective bargaining involving *all* local employes in home rule communities is virtually nonexistent. Local interests predominate. Therefore, all of the statutes administered by ERB are unconstitutional to the extent they

attempt to regulate the employer-employe relations between a home rule community and its nonvital employes.

The argument for a different result as to vital employes can be summarized by turning to the record developed before ERB. It is basically a documentation of the interdependency point.

The Hermiston city police share radio dispatch service, ambulance service, jail and laboratory equipment with state and Morrow and Umatilla Counties law enforcement bodies. The record implies that these other law enforcement bodies, when operating near Hermiston, have no alternative but to use the facilities maintained by Hermiston.

Much of the argument before us belabors the obvious—that a police strike in Hermiston would have serious ramifications beyond the borders of Hermiston.[14] But the issue here is not whether there is a predominant state interest as to police strikes—a question we do not reach. It is whether that interest predominates over the city's interest as to the entire, inseverable and comprehensive employer-employe relations scheme: everything from the contents of the first representation petition to the scope of bargaining.

Under *State ex rel Heinig v. Milwaukie et al, supra,* and *Branch v. Albee,* 71 Or 188, 142 P 598 (1914), both discussed at length in *Beaverton v. F. A. Fire Fighters, supra,* our answer is in the negative. There is simply too attenuated a connection between the state interest in the extraterritorial effect of a local strike in a vital service area and the details in the state collective bargaining statute—details such as whether a representation petition should be accompanied by a 30 percent or a 50 percent showing of interest.[15] On these details, local interests predominate. We hold that with

---

[14] It is not clear why so much is said about police strikes because both the state statute and the Hermiston Ordinance would prohibit one.

[15] *Compare* note 2, *supra, with* note 5, *supra.*

the possible exception of statutes directly controlling strikes, the statutes administered by ERB are unconstitutional to the extent they attempt to regulate employer-employe relations between a home rule community and its vital-service employes.

Those who argue here for state preemption recognize that *Heinig* is cogent and forceful adverse authority. They candidly argue that *Heinig* was wrongly decided. We are not authorized to so rule.

Reversed.