Argued October 28, 1976, affirmed January 17, reconsideration denied February 23, petition for review allowed May 24, 1977

STATE ex rel HALEY, *Respondent,*
*v.*
CITY OF TROUTDALE et al, *Appellants.*
(No. 421424, CA 5819)

558 P2d 1255

Brian J. Freeman, Gresham, argued the cause for appellants. With him on the briefs was Young & Freeman, Gresham.

Al J. Laue, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Allen, Stortz, Barlow & Fox and Willard E. Fox, Salem, filed a brief amicus curiae for Oregon State Homebuilders Association.

Before Schwab, Chief Judge, and Fort and Thornton, Judges.

THORNTON, J.

FORT, J., dissenting.

## THORNTON, J.

The sole issue presented here is whether defendant city has authority to adopt and enforce within the city a requirement for building construction which is more stringent than that provided in the state building code.

The state, acting through its Department of Commerce, brought suit to enjoin defendants from enforcing a city ordinance specifically requiring "double wall" construction of all buildings within the city. Under the state code "single wall" construction is allowed. After a trial the circuit court held that the challenged ordinance conflicted with the "Structural Specialty Code" (Oregon Administrative Rules, ch 814, § 26-005) of the state building code, ORS 456.730 through 456.885, and enjoined defendants from enforcing the ordinance. The trial court concluded that the subject matter was of general state concern; that statewide uniformity was necessary; and that the state code therefore must be held to have preempted the field.

Defendants appeal contending that the court erred because (1) the ordinance is not in conflict with the state building code; and (2) ORS 456.730 to 456.910 as applied to defendants deprive the people of Troutdale of the right of local self-government as guaranteed by the home rule provisions of the Oregon Constitution (Art IV, § 1 and Art XI, § 2).

Defendant city is a municipal corporation. It adopted its home rule charter in 1942 and by virtue thereof may exercise all municipal powers that can be exercised by any Oregon city. Pursuant to this charter defendant city on July 9, 1974, enacted its Ordinance No. 202, which requires that all homes constructed in defendant city be built with a double wall exterior covering. The state structural code was adopted pursuant to an enactment of the 1973 legislature. It became effective on July 1, 1974.

■ ORS 456.775 (1) of the state building code provides:

> "The state building code shall be applicable and uniform throughout this state and in all municipalities therein, and no municipalities shall enact or enforce any ordinance, rule or regulation in conflict therewith."

The above declaration of legislative intent is not binding on the courts with respect to constitutional questions. *State ex rel Heinig v. Milwaukie et al,* 231 Or 473, 373 P2d 680 (1962).

Testimony on behalf of plaintiff dealt with the importance of statewide uniformity and the detrimental effects of allowing each municipality to make changes in the uniform code, particularly with respect to factory-produced homes.

The defendants' evidence tended to stress the need for providing better protection for Troutdale home buyers than that provided by the state code.

■ First, we must determine if there is a conflict between the city's ordinance and the state building code. We cannot agree with defendants' contention that the city's ordinance does not conflict with the state building code. The state code permits single wall construction of sufficient strength; the city ordinance requires double wall construction without regard to strength. Here there is clearly a conflict as to method of construction. We are not here dealing with certain other parts of the state code which provide for local variations.

The more difficult question is whether the subject matter is one of predominantly local concern or statewide concern. Both the state and the city have important interests in the subject matter.

In the leading case of *State ex rel Heinig v. Milwaukie et al, supra* at 479, our Supreme Court said:

> "An enactment is not of state-wide interest simply because the legislature decides that each of the cities in the state should be governed by the same law. In the appropriate case the need for uniformity in the operation

of the law may be a sufficient basis for legislative pre-emption. * * *"

We believe that this is such a case. *Accord: Warren Park Estates v. Tp. Comm. E. Windsor,* 136 NJ Super 180, 345 A2d 346 (1975); *City of Minnetonka v. Mark Z. Jones Assn.,* 306 Minn 217, 236 NW2d 163 (1975). Applying the balancing test set forth in *Heinig,* we conclude that the state's interest in the subject of adequate housing and uniform building standards is paramount. Local concerns must yield to the more compelling concern of statewide uniformity in the area involved here. A variety of local municipal building regulations would defeat the declared state policy of a uniform building code. As the trial judge observed in his letter opinion:

"* * * Uniformity is particularly important as the [housing] industry is embarking on the era of the mass or factory constructed home. * * *"

We cannot accept defendants' contention that the state code requirement for single wall construction merely provides for a minimum requirement, and that any city is free to adopt more stringent requirements. Not only is this contrary to ORS 456.775(1) and 456.755 (1), it would destroy uniformity and in effect be permitting the city to do indirectly that which it cannot do directly. *See, City of LaGrande v. PERB,* 28 Or App 9, 558 P2d 1236 (1977).

Likewise we cannot accept defendants' further contention that ORS 456.785 and the state structural code delegate to local jurisdictions general authority to initiate amendments or modify standards for exterior wall construction to meet local conditions. To the contrary this authority is carefully circumscribed by the statutes and the code itself. It is not a grant of unfettered discretion to local jurisdiction as defendants argue. *Baum Electric Co. v. City of Huntington Beach,* 33 Cal App3d 573, 109 Cal Rptr 260 (1973), relied upon by defendants, is inapposite since there the state law specifically authorized cities to modify the state electrical code. *State ex rel Heinig v. Milwaukie et*

*al, supra; Beaverton v. I. A. Fire Fighters,* 20 Or App 293, 531 P2d 730, Sup Ct *review denied* (1975); and *City of Hermiston v. ERB,* 27 Or App 755, 557 P2d 681 (1976), do not compel a different result in the case at bar. Each of these cases involved attempted state regulation in an area of paramount local concern. In none of those cases, unlike the case at bar, was there shown to be a compelling necessity for statewide uniformity with respect to the subject matter. Their reasoning therefore does not apply here.

Summarizing, we conclude as follows: (1) the state building code has preempted the field with respect to the subject matter involved here; (2) ORS 456.730 to 456.910 and the state building code do not violate the home rule provisions of the Oregon Constitution; (3) Ordinance No. 202 is null and void; and (4) defendants should be and are enjoined from enforcing it. *See, Dent v. Oregon City,* 106 Or 122, 211 P 909 (1923).

Affirmed.

**FORT, J.,** dissenting.

The court here concludes, if I correctly understand its opinion, that as a matter of law the adoption of a building code is a matter of paramount state concern rather than local. As a result it holds that the building code ordinance of a home rule charter city or county is of no effect since the legislature has provided for a state building code.

I dissent for two reasons. I am unable to reconcile this result with *City of Hermiston v. ERB,* 27 Or App 755, 557 P2d 681 (1976), and the authorities cited therein, and, second, it seems to me that geographic and climatic differences, greatly varied as they are in this large state, more than establish the existence of substantial local concern for the kind and quality of housing.

Our opinion in *Hermiston,* and in *Beaverton v. I. A. Fire Fighters,* 20 Or App 293, 531 P2d 730, Sup Ct

*review denied* (1975), as well as the court's decision here, are all bottomed on *State ex rel Heinig v. Milwaukie,* 231 Or 473, 373 P2d 680 (1962). In that opinion the court tells us concerning the purpose of the Home Rule Amendment:

"* * * 'The real test is not whether the state or the city has an interest in the matter, for usually they both have, but whether the state's interest or that of the city is paramount.'

"The solution cannot be arrived at by a recitation of the definitions of 'local' or 'municipal' affairs. The question is, of course, one of degree, and the allocation of power between legislature and municipality must be made by us in accordance with the purpose, as we understand it, of the constitutional amendments which vested in the cities a part and an exclusive part of the power to legislate free from control of the state legislative assembly.

"That purpose, stated broadly, was to make operative the concept that the closer those who make and execute the laws are to the citizens they represent the better are those citizens represented and governed in accordance with democratic ideals. That objective would not be served if we should decide that the legislative assembly pre-empts the field each time it makes a statute applicable to all cities alike." 231 Or at 481-82. (Footnotes omitted.)

An examination of that opinion, as it itself states, is of little aid in determining when a particular matter legislated upon by a city is to be considered primarily of local concern, and thus, under *Heinig* and its progeny, exempt from the legislative power of the state and when it is primarily a matter of state concern and thus subject to state regulation. Nor does it decide when the state may establish minimum statewide standards upon which the home rule municipality may impose added ones—as is the situation in the case at bar.

*Heinig,* in my view, as well as *Branch v. Albee,* 71 Or 188, 142 P 598 (1914), which held pensioning of municipal police to be a matter of local concern,

compelled the result we reached in *Hermiston* and *Beaverton. Heinig* dealt with an attempt to compel the City of Milwaukie, pursuant to a general state statute, to create a civil service commission for its firemen. It thus affected important conditions of municipal employment, and it held those conditions were primarily of local concern and thus not constitutionally subject to state regulation. Accordingly in *Hermiston* we concluded that a state statute seeking to establish and govern public employe collective bargaining did not nullify, replace, or otherwise affect a home rule city's ordinance dealing with the same subject matter. As in *Heinig,* we held such a matter also to be one primarily of local concern, and thus that the general state statute had no application to a home rule city authorized by its charter to legislate on such matters.

It is interesting to note that a quite different view of the meaning of Article XI, Section 2, Oregon Constitution, as amended in June 1906, from that laid down in *Heinig* was taken in one of the earliest cases decided after its enactment.

In *Straw v. Harris,* 54 Or 424, 103 P 777 (1909), the court discussed the meaning and limitations of that home rule amendment at length and said:

"* * * True, the language used in the amendments considered would appear to give to incorporated cities the exclusive control and management of their own affairs, even to the extent, if desired, of legislating within their borders without limit, to the exclusion of the State. But, as stated, these provisions must be construed in connection with others of our fundamental laws, which can but lead to the conclusion above announced; and whatever may be the literal import of the amendments it cannot be held that the State has surrendered its sovereignty to the municipalities to the extent that it must be deemed to have perpetually lost control over them. This no State can do. The logical sequence of a judicial interpretation to such effect would amount to a recognition of a state's independent right of dissolution. It would but lead to sovereigntial suicide. It would result in the creation of states within the state, and eventually

in the surrender of all state sovereignty—all of which is expressly inhibited by Article IV, § 3 of our national constitution. Power to enact local legislation may be delegated, but this of necessity, whether stated or not, is always limited to matters consonant with, and germane to, the general purpose and object of the municipalities to which such prerogatives may be granted.

"Municipalities are but mere departments or agencies of the State, charged with the performance of duties for and on its behalf, and subject always to its control. The State, therefore, regardless of any declarations in its constitution to the contrary, may at any time revise, amend, or even repeal any or all of the charters within it, subject, of course, to vested rights and limitations otherwise provided by our fundamental laws. This, under the constitution as it now stands, may be done by the legislature through general laws only, and the same authority may be invoked by the people through the initiative by either general or special enactments; only the legislature being inhibited from adopting the latter method." 54 Or at 436-37.

Five years later, however, with three of the same justices who decided *Straw* still on the court, in *Branch v. Albee,* supra, the court discussed *Straw* and adopted an essentially opposite view, stating:

"In *Straw v. Harris,* 54 Or. 437 (103 Pac. 782), the justice delivering the opinion says, *inter alia:*

" 'The state, therefore, *regardless of any declaration in its Constitution to the contrary,* may at any time revise, amend, or even repeal any or all of the charters within it, subject, of course, to vested rights and limitations otherwise provided by our fundamental laws. This, under the Constitution as it now stands, may be done *by the legislature* through general laws,' etc.

"This statement is mere *dictum,* and the writer of this opinion cannot approve it.

"Article XI, Section 2, expressly declares:

" 'The legislative assembly shall *not* enact, amend, or repeal any charter or act of incorporation for any municipality, city, or town.'

"The Constitution does *not* provide that the legislative assembly shall not enact, amend, or repeal a city charter *by special laws.* It declares that said body shall

[ 101 ]

*not* enact, amend, or repeal a charter, and the meaning of this provision is that it shall not do that *in any manner. The inhibition is absolute.*

"The *dictum* cited *supra,* from the opinion of *Straw v. Harris,* appears to the writer of this opinion to contravene both the letter and the spirit of Section 2, *supra.* To construe Section 2 according to said *dictum* would, in effect, practically *nullify* the amendments contained therein. The amendments contained in that section were obviously intended to prohibit all legislation by the legislative assembly affecting charters of towns or cities. It was not intended merely *to change the method* of enacting, amending, or repealing charters." 70 Or at 199-200.

This lack of harmony in the Oregon cases continued (Ronchetto and Woodmansee, *Home Rule in Oregon,* 18 Or L Rev 216 (1938), until in *Heinig* the court after discussing some of the earlier and then most recent cases, said:

"Since the foregoing language may leave some doubt as to the rationale of the Schmidt case we now expressly hold that the legislative assembly does not have the authority to enact a law relating to city government even though it is of general applicability to all cities in the state unless the subject matter of the enactment is of general concern to the state as a whole, that is to say that it is a matter of more than local concern to each of the municipalities purported to be regulated by the enactment. Borrowing the language from *Branch v. Albee,* 71 Or 188, 193, 142 P 598, 599 (1914), we hold that the people of a city are not 'subject to the will of the legislature in the management of purely local municipal business in which the state at large is not interested, and which is not of any interest to any outside the local municipality.'

"An enactment is not of state-wide interest simply because the legislature decides that each of the cities in the state should be governed by the same law. In the appropriate case the need for uniformity in the operation of the law may be a sufficient basis for legislative pre-emption. But uniformity in itself is no virtue, and a municipality is entitled to shape its local law as it sees fit if there is no discernible pervading state interest involved.

"We recognize that the constitutional provisions referred to above are susceptible to a narrower construction, but the broader construction adopted in *City of Portland v. Welch,* 154 Or 286, 59 P2d 228, 106 ALR 1188 (1936) apparently endorsed by *Schmidt v. City of Cornelius,* [211 Or 505, 316 P2d 511 (1957),] is supportable, and the matter having finally come to resolution in those cases after a long period of vacillation and confusion in this important area of the law, we believe that it is desirable to reaffirm the position taken in the latter cases." (Footnote omitted.) 231 Or at 479-80.

That holding, obviously, whether or not this court or any of its members agrees with it, is binding upon us.

In *Hermiston,* under *Heinig,* we held unconstitutional as applied to a home rule charter city a state statute adopted in 1973 which contained the following Legislative Policy provision:

"The Legislative Assembly finds and declares that:

"(1) The people of this state have a fundamental interest in the development of harmonious and cooperative relationships between government and its employes;

"(2) Recognition by public employers of the right of public employes to organize and full acceptance of the principle and procedure of collective negotiation between public employers and public employe organizations can alleviate various forms of strife and unrest. Experience in the private and public sectors of our economy has proved that unresolved disputes in the public service are injurious to the public, the governmental agencies, and public employes;

"(3) Experience in private and public employment has also proved that protection by law of the right of employes to organize and negotiate collectively safeguards employes and the public from injury, impairment and interruptions of necessary services, and removes certain recognized sources of strife and unrest, by encouraging practices fundamental to the peaceful adjustment of disputes arising out of differences as to wages, hours, terms and other working conditions, and by establishing greater equality of bargaining power between public employers and public employes;

[ 103 ]

"(4) The state has a basic obligation to protect the public by attempting to assure the orderly and uninterrupted operations and functions of government; and

"(5) It is the purpose of ORS 243.650 to 243.782 to obligate public employers, public employes and their representatives to enter into collective negotiations with willingness to resolve grievances and disputes relating to employment relations and to enter into written and signed contracts evidencing agreements resulting from such negotiations. It is also the purpose of ORS 243.650 to 243.782 to promote the improvement of employer-employe relations within the various public employers by providing a uniform basis for recognizing the right of public employes to join organizations of their own choice, and to be represented by such organizations in their employment relations with public employers." ORS 243.656.

In this case we hold constitutional, also under *Heinig,* a state statute, also adopted in 1973, prohibiting a home rule city from adopting a building code, which states its purpose as follows:

"(1) ORS 456.730 to 456.885 are enacted to enable the Director of Commerce to promulgate a state building code to govern the construction, reconstruction, alteration and repair of buildings and other structures and the installation of mechanical devices and equipment therein, which will establish basic and uniform performance standards providing reasonable safeguards for health, safety, welfare, comfort and security of the residents of this state who are occupants and users of buildings, and will provide for the use of modern methods, devices, materials, techniques and maximum energy conservation.

"(2) The regulations adopted pursuant to ORS 456.730 to 456.885 shall include structural standards; standards for the installation and use of mechanical, heating and ventilating devices and equipment; and standards for prefabricated structures; and shall, subject to ORS 456.760, prescribe reasonable fees for the issuance of building permits and similar documents, inspections and plan review services, by the department.

"(3) ORS 456.730 to 456.885 do not affect the statutory jurisdiction and authority of the Workmen's Com-

pensation Board, under ORS chapter 654, to promulgate occupational safety and health standards relating to places of employment, and to administer and enforce all state laws, regulations, rules, standards and lawful orders requiring places of employment to be safe and healthful.

"(4) ORS 456.730 to 456.885 and any specialty code do not limit the authority of a municipality to enact regulations providing for local administration of the state building code; local appeal boards; fees and other charges; abatement of nuisances; enforcement through penalties; stop-work orders or other means; or minimum health, sanitation and safety standards for governing the use of structures for housing, except where the power of municipalities to enact any such regulations is expressly withheld by statute." ORS 456.755.

ORS 456.775(1) provides:

"The state building code shall be applicable and uniform throughout this state and in all municipalities therein, and no municipality shall enact or enforce any ordinance, rule or regulation in conflict therewith."

Thus, insofar as legislative purpose as expressly declared by it is concerned, it seems clear to me that that body intended (1) to declare both the adoption of a building code and the right of and the procedures for collective bargaining by public employes to be primarily matters of state concern. We give effect to the declaration of legislative intent in the case at bar. We deny it under *Heinig,* in *Hermiston.*

I agree with the majority that the legislative declaration and purpose declared in each of its enactments is not in terms of their constitutional validity binding on the courts, but in a constitutional context such as this I find them highly persuasive.

The majority in reaching its result appears to rely in part upon a found need by the trial court for uniformity "with respect to factory produced homes." I note first that Section 5002 of the Prefabricated Structures Code, Chapter 49 of the Uniform Building Code at 603 (1973), adopted and promulgated by the

State Director of Commerce pursuant to ORS 456.775(1) and (2), expressly exempts the mobile home from the Prefabricated Structures Code. Thus one may assume that the relative number of "factory produced homes" in relation to permanent on-site constructed homes would prove to be but a very small proportion of the homes erected in Oregon—certainly far from sufficient to establish a "predominant state concern" within the broad outlines of *Heinig.*

More important in my view, however, is the denial, implicit in the court's holding, of the importance of local concern arising from the wide differences in climate and geography. The effect of its holding is to require a uniform standard which becomes both a maximum and minimum, regardless of our wide climatic variations. I see the impact of these variations on the homeowner as much or more a matter of local concern than is the right of collective bargaining by public employes we so recognized in *Hermiston.*

Because I cannot satisfactorily distinguish this case from *Heinig* or from *Hermiston* in terms of local versus statewide concern, I respectfully dissent.