Argued September 27, 1977, affirmed April 17, reconsideration denied May 10, remanded on petition for review September 29, affirmed 37 Or App 55, 585 P2d 1148, November 6, reconsideration denied December 5, 1978

DIZICK, *Appellant,*
*v.*
UMPQUA COMMUNITY COLLEGE, *Respondent.*

(No. 75-273, CA 7429)

577 P2d 534

Robert M. Stults, Judge Pro Tempore.

Dean Heiling, Roseburg, argued the cause for appellant. With him on the briefs was Heiling & McIntosh, Roseburg.

Eldon F. Caley, Roseburg, argued the cause for respondent. With him on the brief was Long, Neuner, Dole, Caley & Kolberg, Roseburg.

Before Schwab, Chief Judge, and Johnson and Roberts, Judges.

JOHNSON, J.

[ 559 ]

**JOHNSON, J.**

Plaintiff brought this action under the Oregon Tort Claims Act, ORS 30.260 to 30.300, alleging fraud by the defendant community college. The trial court entered a judgment for defendant notwithstanding a jury verdict of $12,500 on the ground that defendant was immune from tort liability for the alleged misrepresentations. Plaintiff appeals.

Plaintiff's pleadings provide the factual context for discussing the legal issues presented. Plaintiff's complaint alleged:

"II

"On or about the month of February or March, 1974, plaintiff enrolled as a student in the welding technology program of defendant, Umpqua Community College.
"* * * * *

"III

"Plaintiff's said enrollment was in reliance upon representations made in the 1973-74 catalog of defendant, and upon personal representations by agents and employees of defendant. Particularly, said representations by defendant through its catalog, its agents, and its employees, were that certain specific welding courses, namely Course No. 4.164 entitled 'Advanced Welding Processes,' and Course No. 4.182 entitled 'Machine Processes' would be available to plaintiff, that certain welding machines and related materials, namely, a milling machine, metal inert gas welder, tungsten inert gas welder, welding rods and other supplies, would be available to plaintiff, and that upon satisfactory completion of the one year welding technology program offered by defendant, plaintiff would be prepared for employment in the welding market in the State of Oregon. Said representations were false in that said courses, as offered, were not made available to plaintiff, said machines and materials were not made available to plaintiff, and the one-year welding technology program was and is insufficient to adequately prepare students, more particularly plaintiff, for employment in the welding market in the State of Oregon."

[ 561 ]

Plaintiff also made allegations that the representations were false, were either intentionally or recklessly made to induce him to enroll in defendant's one-year welding technology program, that plaintiff did enroll in reliance on such representations, and as a result forwent gainful employment causing damages in the amount of $25,000.

Plaintiff introduced at trial evidence in support of all the above allegations. At the conclusion of the trial, defendant made a series of motions to strike and a motion for a directed verdict. Some of the motions to strike were allowed, with the result that paragraph III of the complaint was submitted to the jury in the following form:

> "Plaintiff's said enrollment was in reliance upon representations made in the 1973-'74 catalogue of Defendant, and upon the personal representations by agents and employees of Defendant, that certain welding machines and related materials; namely, a milling machine, metal inert gas welder, tungsten inert gas welder, welding rods and other supplies, would be available to Plaintiff."

The law of governmental tort liability throughout the United States has had a somewhat confusing history. The confusion arises because there are two distinct, but related, liabilities. First, there is the liability of the governmental entity. Historically, governmental entities were totally immune from tort liability because of sovereign immunity. Second, there is the liability of the governmental agent. Here, a body of common law has developed to the effect that under some circumstances a governmental agent is liable, and under others he enjoys immunity depending upon the nature of the act or function he performs. The confusion commenced with the enactment of statutes, of which the Oregon Tort Claims Act, *supra,* is typical, waiving sovereign immunity. Such enactment presented the question of whether the waiver of sovereign immunity affected the immunity of the governmental agent. This question is significant because a govern-

ment's liability can be only that of principal for the acts or omissions of its agents. It is clear under ORS 30.265 that the common law immunity of the agent was retained. That statute provides, in pertinent part:

"(1) * * * every public body is liable for its torts and those of its officers, employes and agents acting within the scope of their employment or duties * * *.

"(2) Every public body is immune from liability for any claim for injury * * * resulting from an act or omission of an officer, employe or agent of a public body when such officer, employe or agent is immune from liability.

"(3) Every public body and its officers, employes and agents * * * are immune from liability for:

"* * * * *

"(c) Any claim based upon the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

In *Pickett v. Washington County,* 31 Or App 1263, 572 P2d 1070 (1977), we said that the immunity under ORS 30.265(2) and that under ORS 30.265(3)(c) are "one and the same." *Supra,* at 1267. A more accurate characterization is that the "discretionary function or duty" exemption in ORS 30.265(3)(c) is unnecessary, and was merely a reaffirmation of the common law rule that governmental agents are immune from tort liability for the performance of discretionary functions or duties. *See e.g., Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970). In any event, defendant's liability here turns solely on the question of whether college officials are personally immune at common law.

Other jurisdictions have generally held that governmental agents enjoy absolute immunity from liability for representations made within the scope of their official duties.[1] The agents' culpability, whether

---

[1] The principal issue in the cases cited *infra* in this paragraph is whether the representations made had any relationship to the governmental agents' official duties. This is not an issue here inasmuch as plaintiff alleged in his pleadings that defendants were acting within the scope of their official duties.

it be negligence, intentional or with malice, is irrelevant. *See e.g., Barr v. Matteo,* 360 US 564, 79 S Ct 1335, 3 L Ed 2d 1434 (1959); *Howard v. Lyons,* 360 US 593, 79 S Ct 1331, 3 L Ed 2d 1454 (1959); *Heine v. Raus,* 399 F2d 785, 33 ALR 3d 1318, (4th Cir.), *cert den* 402 US 914 (1968); *Poss v. Lieberman,* 299 F2d 358 (2nd Cir.), *cert den* 370 US 944 (1962); *Hardy v. Vial,* 48 Cal 2d 477, 311 P2d 494, 66 ALR 2d 739 (1957); *Sheridan v. Crisona,* 14 NY2d 108, 249 NY Supp 2d 161, 198 NE2d 359 (1964). Although these cases involve defamation as distinguished from fraud, it is clear that the courts were not concerned with the nature of the acts alleged. Immunity was premised on the nature of the governmental activity or function being performed. In *Barr v. Matteo, supra,* the United States Supreme Court stated:

"* * * officials of government should be free to exercise their duties unembarassed by the fear of damage suits in respect of acts done in the course of those duties—suits which would consume time and energies which would otherwise be devoted to governmental service and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government. * * *

"* * * * *

"* * * The privilege is not a badge or emolument of exalted office, but an expression of a policy designed to aid in the effective functioning of government. * * *" 360 US at 571, 572-573.

The total immunity afforded by *Barr v. Matteo, supra,* and its kindred has been criticized as being overbroad. *See e.g.,* J. Handler and W. Klein, *The Defense of Privilege in Defamation Suits Against Government Executive Officials,* 74 Harv L Rev 44 (1960). We do not need to discuss those criticisms here. The issue in any event is one of weighing the competing public concerns of affording citizens redress for tortious wrongs by government agents and the desirability of unfettering governmental activity from litigious interference. Here the balance must be struck in favor of the latter.

The complaint submitted to the jury alleges that defendant's agents represented in the college catalog and orally that a milling machine, metal inert gas welder, tungsten inert gas welder and other supplies "would be available to plaintiff." The catalog states:

"Welding Technology

"One-Year Program

"The courses in this welding program are designed to provide skill development in all types of welding processes. This one-year program will provide the knowledge and skills required in most welding occupations. Students will learn oxy-acetylene electric arc, metallic inert gas, and tungsten inert gas welding techniques.

"Students will be expected to pass proficiency tests to progress in the program. After satisfactory completion of this welding program, the student is awarded a certificate of completion. An opportunity will be provided for certification in arc welding through the Oregon State Bureau of Labor. An extra fee for this test is determined by the number of students involved in this type of test.

"* * * * *

"4.164 Advanced Welding Processes 2 Class 6 Lab

"This course is advanced instruction in electric arc and oxy-acetylene welding. Work with pipe and non-ferrous metals, edge preparation, joint and weld types will be emphasized. 'Tungsten inert gas' and 'metal inert gas' welding processes will be stressed along with semi-automatic burning processes. Prerequisite: 4.160 Basic Oxy-Acetylene and 4.162 Basic Arc Welding or equivalent.

"* * * * *

"4.182 Machine Processes 2 Class 3 Lab

"This is a basic machine shop course introducing the student to basic machine shop tools and practices involved in the use of engine lathes, drill presses, grinder and milling machines. The course will include the basic skills with emphasis on measuring."

The only evidence of oral representations made by defendant's agents is the testimony of plaintiff concerning a statement made to him by the dean of the college shortly before plaintiff enrolled in the one-year

program. According to plaintiff, the dean told him:

> "* * * 'We have the M.I.G. [metal inert gas welder] and T.I.G. [tungsten inert gas welder] and a milling machine on order. It should be in, and we have everything that you need. We'll be able to train you.' "[2]

Although there is no elaboration in the complaint as to what is meant by the statement that the equipment "would be available to plaintiff," plaintiff's testimony indicates that he expected the jury to infer from the representations a promise that he would receive as part of the one-year welding technology program practical training *using* the equipment. Plaintiff further testified that he did not receive such practical training and as a consequence did not attain sufficient proficiency to make him employable as a skilled welder. He admitted that he was offered and received instruction in all the subjects mentioned in the catalog. In effect, then, plaintiff's position is that welding courses without the practical usage and training could not achieve the promised level of proficiency.

The method of instruction and course content obviously involve complex judgmental decisions by college officials. A jury verdict here is tantamount to a direction to the college to provide practical use training as part of the curriculum for the courses offered in the catalog. The legislature intended that such decisions be made by college officials, not by judges and juries in tort actions. ORS 341.290.[3] In *Smith v. Cooper, supra,* 256 Or at 506, the court stated:

> "The most decisive factor but one most difficult to articulate is that it is essential for efficient government

---

[2]Plaintiff also testified that college officials subsequently made repeated representations after he had enrolled in the one-year program that equipment "would be available." The evidence was irrelevant because, according to plaintiff's complaint, it was the inducement to enroll in the one-year program that caused his detrimental reliance and damages.

[3]ORS 341.290 provides in pertinent part:

> "The board of education of a community college district shall be responsible for the general supervision and control of any and all community colleges operated by the district. Consistent with any

that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or jury. The reason behind such factor is that the bases for the legislative or executive decision can cover the whole spectrum of the ingredients for governmental decisions such as the availability of funds, public acceptance, order of priority, etc."

Arguably, a different result might occur if college officials had specifically represented that the welding courses included the practical training that plaintiff contends he should have had. We do not reach that question because there is no allegation or evidence of specific representations of this nature ever being made. The catalog merely states that students "will learn" and will be "introduced to" certain subjects, and other subjects will be "emphasized" and "stressed." There is no statement that students will use equipment or as to how the courses will be taught.

The oral representations made by the dean of the college that "[w]e have the M.I.G. and T.I.G. and a milling machine on order * * * we have everything you need * * * [w]e'll be able to train you" is not necessarily a promise that plaintiff will be able to actually use the equipment as a part of the training offered by the college. The fact that a jury might reasonably draw such inference in a fraud action

---

applicable rules and regulations of the State Board of Education, the board may:

"* * * * *

"(3) Prescribe the educational program.

"(4) Control use of and access to the grounds, buildings, books, equipment and other property of the district.

"* * * * *

"(10) Prescribe and collect fees and expend funds so raised for special programs and services for the students and for programs for the cultural and physical development of the students.

"(11) Provide and disseminate to the public information relating to the program, operation and finances of the community college.

"* * * * *

"(15) Provide student services including health, guidance, counseling and placement services, and contract therefor."

between private parties is insufficient. *See Elizaga v. Kaiser Found. Hosp.,* 259 Or 542, 487 P2d 870 (1971). Reasonable persons could draw a variety of different inferences from such representations. The purpose of immunizing governmental agents is to prevent litigious interference with important governmental functions. That purpose is defeated if courts or juries are permitted to draw specific inferences from general statements. By plaintiff's own testimony, the statements were made by the dean in counseling plaintiff concerning his educational program. ORS 341.290 charges community colleges with performing the counselling function as an important part of the educational program. *See* footnote 3. Effective counselling depends upon free and open communication between the counsellor and the counsellee. Such communication would be chilled if the college counsellor faced potential liability for every statement from which an adverse inference might be drawn.

Immunity does not disappear because plaintiff alleged or introduced evidence of culpable fraud as distinguished from negligence. The controlling consideration is not the degree of culpability, but rather whether the act or function is of the nature that it is essential for efficient government that it not be subject to judicial interference arising out of tort liability. *Smith v. Cooper, supra.* The purpose of the immunity would be defeated if, as suggested by plaintiff, it were restricted only to actions for negligence. The present case is illustrative. The evidence of culpability is wholly circumstantial and largely undisputed. The jury reasonably could have inferred that defendant intentionally or recklessly misrepresented. The jury also could have reasonably inferred there was neither intent nor recklessness because there was no misrepresentation. Alternatively, it could have reasonably concluded that defendant's agents were only guilty of negligence and not fraud. The jury also could have given greater weight to other evidence in

the record, evidence that was also undisputed, and concluded that defendant's failure to achieve proficiency in welding was not due to any lack of availability of equipment, but was the result of his own doing.

We conclude that the allegations and evidence of representations by community college officials presented here constitute acts for which the defendants' agents, and thereby defendants, are immune from tort liability.

Affirmed.

**SCHWAB, C. J.,** specially concurring.

I am in general agreement with the majority's statement of the general principles governing tort liability of public bodies and agree with the result reached. I do not agree that immunity can be determined by the specificity of the representations made by college officials to the plaintiff. The dispositive principle in the case at bar is contained in *Smith v. Cooper,* 256 Or 485, 506, 475 P2d 78 (1970), in which the court stated:

> "The most decisive factor *but one most difficult to articulate* is that it is essential for efficient government that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or jury. The reason behind such factor is that the bases for the legislative or executive decision can cover the whole spectrum of the ingredients for governmental decisions such as the availability of funds, public acceptance, order of priority, etc." (Emphasis supplied.)

The recruiting and counseling of students is an activity which either is immune or is not. Unlike the distinction between highway maintenance and highway design, it is not practically possible to divide recruiting and counseling into separate components, some of which are immune and others are not. *See, e.g., City of Hermiston v. ERB,* 27 Or App 755, 761, 557 P2d 681 (1976), *reversed on other grounds* 280 Or 291, 570 P2d 663 (1977). Assuming, *arguendo,* that there is

evidence of fraudulent statements that fall within the scope of the pleadings, I would hold the Umpqua Community College immune on the ground that recruiting and counseling of students is a government activity not to be reviewed by court or jury.

**ROBERTS, J.,** dissenting.

I cannot accept the reasoning of the majority as to the applicability of governmental immunity to this case. The majority opinion relies upon cases such as *Barr v. Matteo,* 360 US 564, 79 S Ct 1335, 3 L Ed 2d 1434 (1959), to suggest that the culpability of the governmental agent is not relevant. The cases cited deal with actions for defamation and the government agent's privilege. Privilege to commit defamation is a doctrine separate from governmental immunity and based on different policy reasons. The cases cited by the majority are not on point.

More importantly, the majority opinion misconstrues plaintiff's cause of action. The majority states:

"* * * In effect, then, plaintiff's position is that welding courses without the practical usage and training could not achieve the promised level of proficiency.

"The method of instruction and course content obviously involve complex judgmental decisions by college officials. A jury verdict here is tantamount to a direction to the college to provide practical use training as part of the curriculum for the courses offered in the catalog. The legislature intended that such decisions be made by college officials, not by judges and juries in tort actions. * * *" 33 Or App at 566.

While I agree that an action based on the failure of the college to include certain courses in the curriculum or teach certain techniques in the courses would be barred by governmental immunity, I see no relevance to that position in this case. The plaintiff sued on account of statements made to him in order to induce his enrollment. The statements were specific and factual and concerned not the level of proficiency

[ 570 ]

plaintiff would reach, but rather what machines were to be available for training plaintiff.

After restructuring plaintiff's cause of action, the majority finds that it is barred by immunity. To reach this conclusion the majority opinion still finds it necessary to imply some different standard of pleading or proof in actions in which governmental immunity is an issue. This higher standard is not explained nor is any statutory or case authority cited to support the imposition of this standard. 33 Or App at 568. The majority opinion concludes by commenting that the evidence of fraud is slight. While this may be true, its relevance to the question of immunity escapes me.

My analysis of the immunity problem starts at the same point as the majority: ORS 30.260 to 30.300. I agree that in this case the issue turns on whether the acts alleged by the plaintiff are "discretionary" or "ministerial" as those terms have been defined by the courts. *Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970) is generally considered the leading Oregon case on the subject. In *Smith* the court discussed several possible rules to help determine if an activity was discretionary or ministerial. The court stated:

> "The most decisive factor but one most difficult to articulate is that it is essential for efficient government that certain decisions of the executive or legislative branches of the government should not be reviewed by a court or jury. The reason behind such factor is that the bases for the legislative or executive decision can cover the whole spectrum of the ingredients for governmental decisions such as the availability of funds, public acceptance, order of priority, etc." *Smith v. Cooper, supra,* 256 Or at 506.

Although the *Smith* case does not lend itself easily to analysis, it would appear that the factor explained above was relied upon by the court in reaching its conclusion:

> "These allegations charge conduct by the executive branch of the government which should not be reviewed

by the judicial branch. The decisions that were made to do or not to do these things appear to have been dependent upon considerations that a court or jury should not consider, particularly by hindsight, such as the funds available for the project, the amount of additional land necessary to make a more gradual curve, the cost of the land, the loss of the land for recreational or agricultural purposes, the amount and kind of traffic contemplated, the evaluation of traffic and safety technical data, etc." *Smith v. Cooper, supra,* 256 Or at 511.

I would therefore hold that the applicability of governmental immunity depends upon the most decisive factor discussed in *Smith.* I would suggest that an appropriate formulation of that factor would be to construe ORS 30.265(3)(c) to preclude any suit in which determination of liability would necessarily involve judicial review of a policy-based political decision, affecting or concerning the people as a whole, which is expressly or peculiarly within the purview of another branch of government.

Under this formulation, a suit based on the college's failure to offer certain courses or offer a certain type of instruction in the courses would be barred by immunity. Curriculum planning is an activity peculiarly within the purview of another branch of government and should not be made the basis of liability. The suit before us seeks damages for fraud committed by college officials in soliciting plaintiff's enrollment in the college. Such solicitation does not involve policy-based political decisions affecting or concerning the people as a whole. It is my opinion that there is no governmental immunity for the acts involved in this case.

I would remand this case for a new trial on account of two errors below. First, the complaint which went to the jury allowed it to find fraud on the basis of statements made in defendant's catalog. I would hold that in this case fraud could not be predicated on statements made in the college catalog since there are no specific factual representations contained in that

catalog. 33 Or App at 565. Statements in the catalog can properly be classified as "puffing" and thus not actionable as fraud, and arguably, fall in the category of a policy-based political decision.

The second reason I would remand this case is the trial judge's failure to instruct the jury on "recklessness." No definition was given to the jury, although it was a central issue in the case. Although I would not agree that defendant's requested instruction on recklessness correctly states the law I would hold that the trial judge has the obligation to instruct the jury on all relevant matters.

I respectfully dissent.